623 A.2d 241

IN THE MATTER OF OPINION NO. 653 OF THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS.

Argued October 26, 1992—Decided May 4, 1993.

*David Samson* argued the cause for appellant Schwartz, Simon & Edelstein, Esquires (*Wolff & Samson,* attorneys; *Mr. Samson, Lawrence S. Schwartz, Stephen J. Edelstein,* and *Michael S. Rubin,* on the briefs).

*Joseph L. Yannotti,* Assistant Attorney General, argued the cause for respondent Advisory Committee on Professional Ethics (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, Justice.

This case raises the issue of whether partners in a law firm may simultaneously serve as County Counsel and as counsel to a County Vocational School Board. The Advisory Committee on Professional Ethics determined that such an arrangement created an inherent risk of conflict of interest and, more important, the appearance of impropriety. Accordingly, the Advisory Committee determined that such an arrangement was prohibited.

Pursuant to *Rule* 1:19–8, petitioners requested review of *Opinion No. 653* by this Court, and we granted their petition. The Advisory Committee stayed the effect of *Opinion No. 653* pending our decision.

I

On January 1, 1991, Essex County Executive Thomas J. D'Alessio appointed Stephen Edelstein, Esq., a partner in the Schwartz, Simon and Edelstein firm ("the firm"), as Essex County Counsel ("County Counsel"). Pursuant to *N.J.S.A.* 40:41A–37, the Essex County Board of Chosen Freeholders ("Freeholders") confirmed Edelstein's appointment. The County Counsel serves as the chief legal adviser to the executive branch of county government. *Essex County Administrative Code,* § 9.4.3(a). The Department of Law, under the County

Counsel's supervision, advises the County Executive and all county agencies under the County Executive's jurisdiction. *Id.* at § 9.4.3(b)(1). The County Counsel renders legal advice on such issues as the form and sufficiency of contracts, deeds, correspondence, and other documents, and also represents the County Executive and agencies under his or her jurisdiction in litigation. *Id.* at § 9.4.3(b)(ii) and (iii). The County Counsel also renders advisory opinions when requested. *Id.* at § 9.4.3(b)(v).

On or about January 12, 1991, the Essex County Vocational School Board ("School Board") appointed Lawrence Schwartz, Esq., also a partner in the firm, as general counsel to the School Board. Schwartz had extensive experience in the field of education law and had previously represented the School Board from 1979 to 1986. Before 1979 and from 1987 to 1990, however, the School Board did not have separate counsel; during those periods the County Counsel represented the School Board as part of his or her duties.

The School Board consists of seven persons appointed by the County Executive with the advice and consent of the Freeholders. *See N.J.S.A.* 40:41A–37(b); *N.J.S.A.* 18A:54–16. The School Board's powers include purchasing, selling, and improving school grounds, taking and condemning land and other property for school purposes, employing faculty and administrators, and managing school property. *N.J.S.A.* 18A:54–20. The School Board's budget is determined in conjunction with the Board of School Estimate, which consists of the County Executive, two members of the Board of Chosen Freeholders, and two members of the Vocational School Board of Education. *N.J.S.A.* 18A:54–27.

On or before March 25, each year, the School Board delivers to the Board of School Estimate an estimated budget for the upcoming school year. *N.J.S.A.* 18A:54–28. The Board of School Estimate then determines, at a public meeting, the amount of money to be appropriated for the vocational school

district, exclusive of any amount to be received from the State, *N.J.S.A.* 18A:54–29, and certifies that amount to the School Board and to the county's Freeholders. *N.J.S.A.* 18A:54–29.1. The Freeholders appropriate the certified amount and, unless other arrangements have been made, the county must assess, levy, and collect the required funds. *N.J.S.A.* 18A:54–29.2. Slightly less than half of the School Board's budget is derived from the county tax levy; the rest is derived from the State and Federal governments.

In the event the School Board were to appeal its appropriated budget, the appeal would be taken to the State's Commissioner of Education. In 1979, such an appeal was taken. At that time, both the School Board and the Board of School Estimate retained special counsel for the appeal. The County is not a party to budget appeals. The record in this case indicates that the Office of County Counsel has never been asked to represent, nor has it ever represented, the Board of School Estimate, either during or before Edelstein's tenure as Counsel.

As noted above, prior to 1979, and from 1987 to 1990, the School Board and County did not have separate counsel. No objection, however, was raised to the arrangement. On or about March 25, 1991, one of the County freeholders wrote to the Advisory Committee on Professional Ethics ("the Advisory Committee" or "Committee") on behalf of himself and another freeholder. The freeholder asked the Advisory Committee whether it was proper for two partners in the same law firm to hold the positions of County Counsel and Counsel to the School Board.

In response, the Advisory Committee issued Opinion No. 653. 129 *N.J.L.J.* 514 (Oct. 17, 1991). The Committee noted that the Essex County Vocational School Board is appointed rather than elected. The Advisory Committee determined that the appointing authority and the funding source for both the County Counsel's office and the School Board are essentially the same. The opinion further observed that earlier Committee opinions

addressing similar situations expressed warnings about the appearance of impropriety. Although the Advisory Committee found that an actual conflict may not exist in such situations, it determined that the representation of both the County and the School Board by members of the same firm posed an unacceptable risk of conflict and appearance of impropriety. It concluded that, in specific instances, disqualification would not be a sufficient remedy to address the overriding ethical considerations presented by a conflict, because disqualification increases the cost of legal services and deprives the client of the services of the attorney it had selected. Accordingly, the Committee found that petitioners could not simultaneously serve both as County Counsel and as counsel to the Board.

## II

One of the most basic responsibilities incumbent on a lawyer is the duty of loyalty to his or her clients. From that duty issues the prohibition against representing clients with conflicting interests. See Stephen Gillers & Roy D. Simons, Jr., *Regulation of Lawyers—Statutes and Standards* 40 (1989). So fundamental is that duty that one legal commentator declared, almost a century and a half ago, " 'The criminal and disgraceful offence of taking fees of two adversaries ought, like parricide in the Athenian law, to be passed over in silence in a code of professional ethics.' " *Developments in the Law— Conflicts of Interest in the Legal Profession,* 94 *Harv. L.Rev.* 1244, 1247 (1981) (quoting George Sharswood, *A Compend of Lectures on the Aims & Duties of the Profession of the Law* (1854)).

That ethical transgression, however, is not passed over by our ethics rules. The New Jersey Rules of Professional Conduct (*RPC*) contain express provisions governing the representation of conflicting or potentially conflicting clients. *RPC* 1.7 provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) each client consents after a full disclosure of the circumstances and consultation with the client.

. . . . . . . .

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances * * *.

*Accord American Bar Association Model Rules of Professional Conduct* 1.7 (1983); *Model Code of Professional Responsibility EC* 5–5; *DR* 5–105(A) (1980).

The *RPC* and case law on this subject do not confine themselves to situations of *actual* conflict of interest. For example, *RPC* 1.7 does not alter the effect of ethics opinions or case law that find multiple representation impermissible in those "situations creating an appearance of impropriety rather than actual conflict." *RPC* 1.7(c). In "situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients," such representation is prohibited. *Ibid.*

■■ Significantly, under our law the appearance of impropriety is determined not from the perspective of the attorney involved but from the public's vantage. See *Perillo v. Advisory Comm. on Professional Ethics*, 83 *N.J.* 366, 373, 416 *A.*2d 801 (1980); *Accord DR* 9–101. Avoiding the appearance of impropriety is especially important when the representation of governmental entities is involved. "Positions of public trust call for even more circumspect conduct." *In re Opinion 415*, 81 *N.J.* 318, 324, 407 *A.*2d 1197 (1979). Attorneys like petitioners, who serve as counsel to governmental entities, must, therefore, be especially vigilant in avoiding "not only direct

conflicts of interest, but any situation which might appear to involve a conflict of interest." *Ibid.*

Accordingly, the Advisory Committee and this Court have gradually, but progressively, defined the instances in which the representation of multiple governmental bodies by the same attorney created an appearance of impropriety. Justice Pollock provided a survey of the development of our law, in this area, in his opinion for the Court in *In re Ethics Opinion 452*, 87 *N.J.* 45, 432 *A.*2d 829 (1981). There, the Court noted that an attorney cannot serve as counsel for a municipality and as county counsel, *In rè Opinion 415, supra*, 81 *N.J.* 318, 407 *A.*2d 1197; that an attorney cannot represent the board of adjustment in the same municipality in which his or her partner serves as municipal attorney, *Opinion 366*; that an attorney cannot represent both the board of adjustment and the planning board of the same municipality, *Opinion 164*; and that an attorney cannot accept appointment as counsel to a municipal planning board when his or her partner is an attorney for the same municipality, *Opinion 149*. *See In re Professional Ethics Opinion 452, supra*, 87 *N.J.* at 49, 432 *A.*2d 829 (surveying development of conflict of interest law for government attorneys in New Jersey); *In re Petition for Review of Opinion 569*, 103 *N.J.* 325, 329–30, 511 *A.*2d 119 (1986) (summarizing history of New Jersey case law requiring attorneys to avoid appearance of impropriety).

From the history of our case law on this subject, the decision most closely related to the case before the Court is *In re Opinion 415, supra*, 81 *N.J.* 318, 407 *A.*2d 1197. In *Opinion 415* the Court found that an office association or partnership between counsel for a municipality and counsel for the county in which that municipality was located presented an impermissible "appearance of impropriety." In evaluating the potential for conflict between the two prospective clients, the Court undertook a detailed and fact-specific examination of the frequency with which counties and municipalities negotiate contracts and transact business and the incidence of litigation

between municipalities and counties. *Id.* at 325, 407 *A.*2d 1197. On the facts of the situation before it, the Court concluded that such dual representation presented the appearance of impropriety because of the frequently antagonistic interests of the county and the municipality. *Id.* at 326, 407 *A.*2d 1197.

Nevertheless, the Court in *Opinion 415* expressly declined to decide whether the partner or associate of a municipal or county attorney may represent a county or municipal board or commission. *Id.* at 322, 407 *A.*2d 1197. Thus, although closely analogous, *In re Opinion 415* does not itself resolve the question of whether two law partners may assume the respective positions of County Counsel and Counsel to the County Vocational School Board.

Behind all the cases surveyed, however, stands a profound concern for "public confidence in our system of government" and the public's "perception of the independence and integrity of the legal profession." *Ibid.* That is reflective of a broader public policy that shares a similar concern. The Legislature has expressed the need for promoting public confidence in government officials in the 1991 Local Government Ethics Law, which prohibits government officials' employment that "might reasonably be expected to prejudice his independence of judgment in the exercise of his official duties." *N.J.S.A.* 40A:9–22.5(e). The Court's manifest concern about the appearance of impropriety, however, is directed to "something more than a fanciful possibility." *Higgins v. Advisory Comm. on Professional Ethics,* 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977). The appearance of impropriety "must have some reasonable basis." *Ibid.* Moreover, the Court's analysis of actual or apparent conflict of interest does not take place "in a vacuum," but is, instead, highly fact specific. *In re Opinion 415,* 81 *N.J.* at 325, 407 *A.*2d 1197.

In assessing the reasonable basis for the appearance of impropriety, the Court adopts the perspective of an informed citizen. *Id.* at 331, 407 *A.*2d 1197. See *In re Opinion 415,*

*supra*, 81 *N.J.* at 325, 407 *A.*2d 1197; *Perillo, supra,* 83 *N.J.* at 373, 416 *A.*2d 801. Within that framework we must now undertake a careful consideration of the facts of petitioners' case to determine if there is a reasonable likelihood for an actual conflict of interest or if petitioners' situation would create an appearance of impropriety in the mind of a reasonable and informed citizen.

### III

█ The Court, in *In re Opinion 415,* assessed the actual frequency and potential likelihood of conflicting interests between the governmental entities whose representation was involved in that case. That assessment was based on three factors: (1) contractual obligations and business transactions between the public entities; (2) the frequency of litigation that arises between the two public entities; and (3) the frequency with which the two entities have antagonistic interests. 81 *N.J.* at 325–26, 407 *A.*2d 1197. Based on those three factors, the Court concluded that dual representation of a municipality and its surrounding county " 'invit[ed] a clash of the obligations each unit of government owes to its respective citizens.' " *Id.* at 325, 407 *A.*2d 1197 (quoting *McDonough v. Roach,* 35 *N.J.* 153, 159, 171 *A.*2d 307 (1961)).

In the present case, the governmental entities involved have minimal contractual obligations or business transactions. The School Board and Essex County are contractually bound by two contracts. One contract provides that the Essex County Hospital Center will train students enrolled in the licensed practical nurse program of the Essex County Vocational School ("Vocational School"). That agreement is one of several similar contracts the Vocational School maintains with various hospitals to provide training for the Vocational School's nursing students. The second contract between the School Board and the County provides that the Vocational School will run the educational program for juvenile detainees at Youth House, a

residential detention facility for juveniles awaiting adjudication by the Family Division of the Superior Court. That contract is a longstanding one and is renewed without substantial alteration.

The Advisory Committee argues that, in fact, the two contracts provide ample grounds for disputes between the County and the School Board. To illustrate its point, the Advisory Committee inventories each term of the two contracts and offers hypothetical disputes that might arise.

We find those hypothetical conflicts inadequate to establish a reasonable likelihood of conflict of interest. In fact, there has been no dispute over these contracts, which, as noted, are routinely renewed. By contrast, in *In re Opinion 415*, on which the Advisory Committee so heavily relied in its determination in this case, the Court identified more than fourteen different areas in which, by statute, counties and municipalities negotiate contracts and transact business with one another. In comparison with the situation in *In re Opinion 415*, the contractual and business relationship in this case is negligible.

Second, with one arguable exception, no history whatsoever exists of litigation between the School Board and the County. That exception occurred in 1979 when the School Board appealed to the Commissioner of Education from the decision of the Board of School Estimate establishing the budget of the vocation school. Significantly, at the time of that litigation, the School Board did not have separate counsel but was represented in most matters by the County Counsel. For the 1979 litigation, special counsel was appointed.

We have noted, in the past, that the withdrawal of counsel in cases of actual conflict is not a remedy for the appearance of impropriety. *See In re Opinion 415, supra*, 81 *N.J.* at 322, 407 *A.*2d 1197 (holding such withdrawal increases the cost of legal services to public and deprives public of representation by attorney it first selected). In the instant case, however, the possibility of litigation is so remote that

should actual conflict arise, the appointment of special counsel would be an appropriate remedy.

We would also note, in regard to the 1979 litigation, that the County was not, technically, the adverse party in that litigation. *N.J.S.A.* 40:41A–36 and –37 give the County Executive broad authority over county departments and agencies, including budgetary and supervisory responsibility. The County Executive has no such authority over the Board of School Estimate. *See N.J.S.A.* 18A:54–27 (establishing a County Vocational School Board of Estimate).

The Board of School Estimate consists of two members of the County Vocational School Board of Education, appointed by that Board; two members of the Board of Chosen Freeholders, appointed by that Board; and the County Executive. The County Executive is just one of five members of the Board of School Estimate, and has no appointing authority for the other members. Therefore, the Board of School Estimate is an independent entity, not subject to the control of the County Executive. It is not a county agency, and litigation involving the Board of School Estimate is not litigation involving the County.

Moreover, as pointed out in *Board of Trustees of Mercer County College v. Sypek*, 160 *N.J.Super.* 452, 461, 390 *A.*2d 629 (App. Div.), *certif. den.* 78 *N.J.* 327, 395 *A.*2d 196 (1978), the County has no authority "to control, alter, diminish or abolish county colleges and vocational schools." The issue presented in *Board of Trustees of Mercer County Community College* was whether the Optional County Charter Law, *N.J.S.A.* 40:41A–1 to –149, supersedes the legislation under *Title* 18A, pertaining to county colleges, *N.J.S.A.* 18A:64A–1 to –78. The Appellate Division found that county colleges and vocational schools are autonomous governmental entities designed to operate independently of the counties in which they are located. *Id.* at 460, 390 *A.*2d 629.

The Advisory Committee, in *Opinion 653*, noted that because the County Executive appoints the members of the School Board, subject to Freeholder approval, and the Board appoints its own counsel, the appointing authority for the County Counsel and the School Board's counsel "is essentially the same." 129 *N.J.L.J.* 514 (1991). Although that proposition may be correct, we do not think that an inherent conflict of interest therefore necessarily results. The whole premise, after all, of the Department of the Public Advocate is that one department of State Government may sue another. *See, e.g., Public Advocate v. Public Utilities Board,* 189 *N.J.Super.* 491, 460 *A.*2d 1057 (App.Div.1983). Both the Public Advocate and the Attorney General are appointed by the same authority, yet we have never found that arrangement to constitute an inherent conflict of interest.

We find that the interests of School Board and the County are rarely antagonistic. Accordingly, we conclude that the Advisory Committee erred in its determination in *Opinion 653*. An attorney or his or her partner or associate may serve as counsel to a vocational school board and as counsel to the county in which the vocational school board is located.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.