826 A.2d 597

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. NATHANIEL HARVEY, DEFENDANT–
RESPONDENT.

Argued November 6, 2002—Decided January 15, 2003.

*Nancy A. Hulett,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney).

*Eric V. Kleiner,* Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Kleiner* and *Carol J. Garcia,* Designated Counsel, on the briefs).

The opinion of the Court was delivered by

VERNIERO, J.

We granted leave to appeal, 171 *N.J.* 439, 794 *A.*2d 179 (2002), to resolve a narrow question related to defendant's petition for

post-conviction relief (PCR). The petition stems from a previous capital-murder conviction for which defendant received a death sentence. It alleges, among other things, that the prosecutor's office in Middlesex County had engaged in misconduct by destroying evidence that might have aided the defense. That allegation, although broadly framed, focuses most specifically on one assistant prosecutor. Its merit is not before us. The sole issue at this juncture is whether the bare assertion of prosecutorial misconduct is sufficient to disqualify the entire prosecutor's office from representing the State in connection with defendant's petition. We hold that a blanket disqualification is not required.

I.

The State twice tried defendant for capital murder. In each instance the prosecutor's office in Middlesex County represented the State. This Court reversed defendant's first conviction and death sentence for reasons not relevant here. *State v. Harvey*, 121 *N.J.* 407, 411, 581 *A.*2d 483 (1990) (*Harvey I* ), *cert. denied*, 499 *U.S.* 931, 111 *S.Ct.* 1336, 113 *L.Ed.*2d 268 (1991). Judge Glenn Berman presided over the retrial that resulted in defendant's second conviction for which defendant also received the death sentence. We thereafter affirmed that conviction and sentence, *State v. Harvey*, 151 *N.J.* 117, 137, 699 *A.*2d 596 (1997) (*Harvey II* ), *cert. denied*, 528 *U.S.* 1085, 120 *S.Ct.* 811, 145 *L.Ed.*2d 683 (2000), and determined that the sentence was not disproportionate when compared to similar cases. *State v. Harvey*, 159 *N.J.* 277, 284, 731 *A.*2d 1121 (1999) (*Harvey III* ).

While defendant's direct appeal of his second death sentence was pending, Judge Berman resigned from the bench to become prosecutor of Middlesex County. In July 1999, anticipating defendant's present PCR petition, the Attorney General superseded then-Prosecutor Berman and assigned two deputy attorneys general, Nancy A. Hulett and Robert J. Brass, to handle the matter. The stated reason for the supersession was "to avoid any appearance of impropriety" due to Berman's prior role as trial judge.

See *N.J.S.A.* 52:17B–107a (authorizing supersession "[w]henever in the opinion of the Attorney General the interests of the State will be furthered by" that action).

Defendant filed his PCR petition in late 1999. Initially submitted as a *pro se* application, the petition alleges, among other things, that defendant was denied effective assistance of counsel in violation of the federal and State constitutions. The attorney who had served as defendant's retrial counsel is now a Superior Court judge sitting in Middlesex County. Because of that fact, the Law Division, on its own motion, transferred venue of defendant's application to Union County, where it remains.

Before the PCR court, defendant moved for discovery of certain materials. The court granted that motion. The court ordered the State to provide defendant with a list of items on file with Cellmark Laboratories (the company that had conducted DNA testing for defendant's retrial), in addition to all documents relating to the chain of custody of those items. The court further directed discovery of all relevant autopsy reports, all photographic evidence related to defendant's retrial, as well as other items on the State's evidence list.

Subsequent to those discovery directives, in June 2001, defendant amended his petition with the assistance of counsel. The amended petition includes a claim that the State had mishandled a bloody quilt and blanket that it had confiscated from a previous suspect. The petition asserts that the State had returned those articles to their owner before the defense had had the opportunity to conduct certain scientific tests. Accordingly, defendant contends that the State had destroyed physical evidence that might have exculpated him or aided his defense. The petition also alleges numerous discovery violations, including those purportedly committed by the State following the Attorney General's supersession of Berman.

After defendant had filed the amended petition, Brass notified the PCR court and defense counsel that Thomas Kapsak, a Middlesex County assistant prosecutor, would replace him as co-

counsel. In explaining that selection, Brass noted that Kapsak had worked on the first trial in *Harvey I* and thus was "very familiar with this case[.]" Defendant's counsel objected. He argued that it was improper to so designate an attorney from within the prosecutor's office when the office itself was "the focal point of numerous and substantial prosecutorial misconduct charges[.]" Moreover, defense counsel suggested that Kapsak had been the official responsible for returning the previously described quilt and blanket. He also suggested that Kapsak had committed other acts of misconduct during prior proceedings involving defendant's case.

Expressing belief that no basis existed for defendant's objection, the Attorney General nonetheless removed Kapsak from the matter in July 2001. In his place, the Attorney General appointed Julia L. McClure, Middlesex County's deputy first assistant prosecutor, as a special deputy attorney general to represent the State. (McClure's title as deputy first assistant prosecutor places her near the top of the prosecutor's table of organization, above Kapsak.) In deputizing McClure, the Attorney General's office indicated that she would answer directly to it and not to anyone within the prosecutor's office.

In a letter to Hulett, the other deputy attorney general assigned to the case, defense counsel objected to McClure's involvement, consistent with his earlier complaint against Kapsak. The letter states, in part:

> [I]t is the defense's position that your office has no authority without receiving permission from the Court to appoint as co-counsel a prosecuting attorney who works for the [Middlesex County Prosecutor's Office (MCPO)] and is a direct subordinate of the trial judge in [*Harvey II*], Glenn Berman.
>
> . . . .
>
> You claim that your new co-counsel has just been sworn in as a Deputy Attorney General.... Is she still handling matters in the MCPO? Does Ms. McClure ... still have her checks being signed by the MCPO? Does Ms. McClure have a professional relationship with and/or contact with the investigators assigned previously to this file by MCPO? Under the circumstances, the defense still objects to

this attempt by the [deputy attorneys general] to utilize a member of the MCPO as co-counsel for the [State].

[Assistant Prosecutor] Kapsak and MCPO Deputy First Assistant Julia McClure are both subordinates of MCP Glenn Berman. That is a conflict.... Your continued attempts to place a high level MCPO prosecuting attorney as co-counsel only serves to have a MCPO insider with access to all evidence that pertains to this case, and it gives the MCPO investigators who are already parties to claims of prosecutorial misconduct direct access to a co-counsel from the same office (MCPO). The [Attorney General's] act of changing Ms. McClure's title to [special deputy attorney general] is cosmetic and ceremonial window dressing and nothing more.

The PCR court granted defendant's motion to disqualify McClure. The court explained in an oral opinion:

[The] [u]nderlying basis for the motion brought by the defense is that the Middlesex County Prosecutor, Prosecutor Berman, ... did, as Judge Berman, preside over the trial of the defendant at *Harvey II*.

. . . .

[W]hat concerns me with respect to this application is ... [the] appearance [of conflict] as opposed to any actual impropriety.

. . . .

Looking at Mr. Berman now as prosecutor, and viewing him sitting at the other table, I have, I think, the same concern I would have ... if he was on the defense side. I am—I am concerned that ... the appearance of impropriety exists. There is a concern, I'm not sure how strong a concern it is, that Mr. Berman himself would be called to testify perhaps at a PCR hearing. That may be more remote than the fact that other people from that office may wind up testifying, which is probably a more realistic possibility.

Because I feel that there is that appearance ... that his participation in the case would be improper, I am compelled to conclude that the appearance in this case of anyone from the Middlesex County Prosecutor's Office, as members of that staff, carries with it the same appearance [of impropriety].

Consistent with that opinion, the court entered a written order barring McClure and all other attorneys within the prosecutor's office from representing the State. It did not address specifically whether the Attorney General's supersession of Berman had removed any potential conflict. The court later clarified its order to prohibit only county attorneys from working on the matter and not investigators.

The State moved before this Court for leave to appeal the trial court's decision. As noted, we granted that motion and subsequently stayed the underlying PCR proceeding (which, at that juncture, was steeped in on-going discovery issues) while we considered this appeal. The State informed us in July 2002 that Glenn Berman had ceased serving as prosecutor, having returned to the bench as a Superior Court judge that same month. Bruce J. Kaplan replaced Berman and is Middlesex County's current prosecutor.

## II.

■ The State argues that Berman's return to the bench removes the factual underpinning to much, if not all, of the trial court's determination. We agree. Berman's change in position has rendered moot any conflict that might have arisen because of Berman's prior status as prosecutor. The PCR court's opinion relies almost exclusively on Berman's prosecutorial role, which the court itself had characterized as the "[u]nderlying basis for the motion brought by the defense[.]" We, therefore, express no opinion concerning that aspect of the PCR court's decision that is now moot. See *State v. Gartland*, 149 *N.J.* 456, 464, 694 *A.*2d 564 (1997) (observing that "this Court will not render advisory opinions or exercise its jurisdiction in the abstract").

■ The remaining issue is whether any disabling conflicts exist notwithstanding that Berman is no longer prosecutor. The State contends that any arguable conflicts that might have arisen were personal to Berman. It thus asserts that in view of Berman's departure there is no basis to disqualify the entire prosecutor's office in the manner sought by defendant. Defendant, in response, acknowledges that Berman's return to the bench "dilutes" the conflict issue insofar as Berman is concerned. He argues, however, that the change in position does not eliminate the broader conflict question. Defendant asks that we give heightened scrutiny to any potential conflict that might occur within the context of this capital proceeding.

We begin our analysis by reaffirming our belief that "[t]he heightened responsibilities of prosecutors include faithful adherence to all ... protections accorded defendants[.]" *State v. Carreker*, 172 *N.J.* 100, 115, 796 *A.*2d 847 (2002). " 'Because of the overwhelming power vested in his office, [a prosecutor's] obligation to play fair is every bit as compelling as his responsibility to protect the public.' " *Ibid.* (alteration in original) (quoting *State v. Torres*, 328 *N.J.Super.* 77, 94, 744 *A.*2d 699 (App.Div.2000)); *see also RPC* 3.8 (outlining special responsibilities of prosecutors). We also agree with defendant that "[p]rosecutors must be particularly careful to fulfill [their responsibilities] in capital cases[.]" *State v. Koskovich*, 168 *N.J.* 448, 489, 776 *A.*2d 144 (2001).

We disagree, however, that our heightened concern in a capital proceeding requires the broad disqualification sought here. Our evaluation of an actual or apparent conflict, or of an appearance of impropriety, "does not take place 'in a vacuum,' but is, instead, highly fact specific." *In re Opinion 653*, 132 *N.J.* 124, 132, 623 *A.*2d 241 (1993) (quoting *In re Opinion 415*, 81 *N.J.* 318, 325, 407 *A.*2d 1197 (1979)). In that respect, the Court's attention "is directed to 'something more than a fanciful possibility.' " *Ibid.* (quoting *Higgins v. Advisory Comm. on Prof'l Ethics*, 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977)). To warrant disqualification in this setting, the asserted conflict "must have some reasonable basis." *Ibid.* (internal citation and quotation marks omitted).

In applying those tenets we are satisfied that the bare allegation of prosecutorial misconduct is insufficient to disqualify McClure and all other assistant prosecutors from representing the State. Defendant makes no specific claim of misconduct against McClure. Nor has there been any finding of impropriety against any other attorney within the prosecutor's or Attorney General's office who may have worked on defendant's petition thus far. In that regard, the PCR court stated unequivocally:

> And just let me add that it has been my experience over the more than a year that I have dealt with both defense counsel and State's counsel in connection with this matter, that there has been not the slightest indication or evidence of any unprofessional conduct on the part of any person who has appeared in the case.

And I will include, obviously, the ... counsel here today [McClure, Hulett, and Eric V. Kleiner] as well as Mr. Brass.

Along those same lines we anticipate that McClure, as a senior member of the prosecutor's staff, will have an unencumbered ability to investigate all allegations thoroughly. Moreover, the PCR court ultimately will evaluate defendant's complete petition, performing its customary function as a neutral judicial body. The court's evaluation will occur only after it accords defendant the protections traditionally available in a PCR proceeding, within the framework of the adversarial process. Under those circumstances, the extraordinary relief sought by defendant is not warranted.

We reasoned similarly in *State v. Marshall*, 148 *N.J.* 89, 690 *A.*2d 1 (*Marshall III* ), *cert. denied*, 522 *U.S.* 850, 118 *S.Ct.* 140, 139 *L.Ed.*2d 88 (1997). The prosecutor's office in Ocean County had tried that capital case on the State's behalf. Thereafter, the Attorney General represented the State in connection with the defendant's PCR petition. The petition raised claims of prosecutorial misconduct. The director of the Division of Criminal Justice, an arm of the Attorney General's office, had been a high-level subordinate of Ocean County's prosecutor during the period relevant to the defendant's claims. *Id.* at 284–85, 690 A.2d 1.

On those facts, the defendant argued before this Court that the presence of the prosecutor's former subordinate within the Attorney General's office should have precluded that office from participating in the adjudication of his petition. *Ibid.* We rejected that argument. *Id.* at 285, 690 A.2d 1. We stated that, without more, "[t]he fact that defendant alleges misconduct in prior proceedings cannot entitle him to disqualify counsel for the State." *Ibid.*

The result in *Marshall III* was consistent with our rejection of an earlier disqualification motion made by the same defendant. In that application, the defendant sought to bar the county prosecutor from representing the State in a remand hearing to explore alleged discovery violations. *State v. Marshall*, 123 *N.J.* 1, 176–77, 586 *A.*2d 85 (1991) (*Marshall I* ), *cert. denied*, 507 *U.S.* 929, 113

*S.Ct.* 1306, 122 *L.Ed.*2d 694 (1993). The defendant argued that because that office would be seeking to vindicate its prior work on his file, a disqualification order was necessary. The trial court disagreed and we affirmed, citing the trial court's statement that

"[i]t's not a situation that seems to call for a disqualification of the Prosecutor. It's not a situation in which the Prosecutor has this type of nefarious interest such as ... [a] personal financial stake in the outcome of the case or something of that nature. I suppose in a sense you could always argue the Prosecutor has an interest in the outcome of any case, but this is not that type of situation in which the Prosecutor has that type of interest."

[*Id.* at 176, 690 A.2d 1.]

Urging a contrary conclusion in this case, defendant emphasizes the likelihood that Kapsak will be called to testify before the PCR court. That prospect does not itself disqualify the prosecutor's office from representing the State. *State v. Irizarry,* 271 *N.J.Super.* 577, 599–600, 639 *A.*2d 305 (App.Div.1994) (finding that defendant's intention to call certain members of prosecutor's office to testify at penalty phase of capital proceeding did not bar entire office from prosecuting case); *see also Riboni v. District Court,* 196 *Colo.* 272, 586 *P.2d* 9, 11 (1978) (en banc) (predicting deleterious impact on system if opposing counsel were permitted "unfettered option of removing any prosecutor who has personal knowledge of any material fact in case").

We also note that as of November 12, 2002, the prosecutor's office in Middlesex County employed a total of forty-seven attorneys. The office is large enough to permit McClure, if she deems it necessary, to "wall off" Kapsak and other potential witnesses as she investigates defendant's petition with assistance from other county personnel. In addition, as indicated in the State's brief, the parameters of a future evidentiary hearing are not yet known. Thus, at this interlocutory stage, Kapsak's status as a material witness is unconfirmed.

An "appearance of impropriety is determined not from the perspective of the attorney involved but from the public's vantage." *In re Opinion 653, supra,* 132 *N.J.* at 130, 623 *A.*2d 241. From that perspective, we are persuaded that McClure's involve-

ment poses little or no risk to the integrity of the process. At bottom, defendant seeks to disqualify a whole agency by asking us to presume that neither McClure nor any person working under her is capable of independently evaluating his petition. In view of Berman's change in position, the high-level ranking of McClure within the prosecutor's office, and the lack of any suggestion of misconduct on her part, we find no compelling rationale to require defendant's requested disposition.

### III.

The Attorney General has not indicated whether he will continue to supersede the prosecutor's office now that Berman has returned to the bench. Under *N.J.S.A.* 52:17B–107a and applicable case law, that is his decision to make. See *Marshall I, supra,* 123 *N.J.* at 176–77, 586 *A.*2d 85 (deferring to Attorney General's decision not to supersede county prosecutor notwithstanding defendant's claim that prosecutor had conflict in representing State at capital remand hearing).

In any event, given the State's endorsement of McClure, the Court assumes that she will continue to be primarily responsible for working on defendant's file. Should that not occur, we further assume that McClure's replacement would be a person of similar high rank, against whom defendant has made no specific allegation of misconduct. That person should enjoy the same unencumbered ability as McClure to investigate thoroughly all claims contained in defendant's petition. We reiterate that those claims, including possible claims against Kapsak, are completely unproven at this juncture.

Lastly, as is their right, defendants frequently allege one or more forms of prosecutorial misconduct in these circumstances. A rule that required us to disqualify an entire prosecutor's office because of allegations against one or two of its members likely would lead to significant disruptions within the criminal justice system. The negative effects of such a rule would be far in excess of its positive consequences to this or future defendants. Nor is it

mandated under our existing jurisprudence for the reasons already expressed. We decline to presume that McClure, working under the supervision of either the Attorney General or the new prosecutor, cannot justly and fairly respond to defendant's claims.

## IV.

The PCR court's disqualification order shall be vacated. The matter is remanded to the Law Division for that purpose and for further proceedings consistent with this opinion.

*For vacation and remandment*—Chief Justice, PORITZ, and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI, and ALBIN—7.

*Opposed*—None.