**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1766-22
               A-1768-22
               A-2268-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SHAKEEM BANKS,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GARY ELKIN,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CHARLES LEDBETTER,

 Defendant-Appellant.

_____

   Submitted September 24, 2024 – Decided November 4, 2024

   Before Judges Smith and Vanek.

   On appeal from the Superior Court of New Jersey,
   Law Division, Salem County, Indictment Nos. 16-11-
   0498, 15-12-0578, and 14-09-0508.

   Jennifer N. Sellitti, Public Defender attorney for
   appellant Shakeem Banks in A-1766-22 (Joseph A.
   Manzo, Designated Counsel, on the brief).

   Jennifer N. Sellitti, Public Defender, attorney for
   appellant Gary Elkin in A-1768-22 (Monique Moyse,
   Designated Counsel, on the brief).

   Jennifer N. Sellitti, Public Defender, attorney for
   appellant Charles Ledbetter A-2268-22 (Susan Brody,
   Designated Counsel, on the brief).

   Kristin J. Telsey, Salem County Prosecutor, attorney
   for respondent in A-1766-22 and A-1768-22 (Matthew
   M. Bingham, Assistant Prosecutor, of counsel and on
   the brief).

   Matthew J. Platkin, Attorney General, attorney for
   respondent in A-2268-22 (David Galemba, Deputy
   Attorney General, of counsel and on the brief).

PER CURIAM

 In these appeals, calendared back-to-back, defendants Shakeem Banks

(Banks), Gary Elkin (Elkin), and Charles Ledbetter (Ledbetter) (collectively defendants), raise similar legal issues under different factual circumstances. All three defendants appeal from orders denying their post-conviction relief (PCR) motions based on ineffective assistance of counsel and disqualification of the Salem County Prosecutors Office (SCPO). Ledbetter also appeals the denial of his PCR motion seeking the production of Division of Child Protection and Permanency (Division) records regarding his care as a juvenile.

Based on our thorough review of the record and application of prevailing decisional law, we affirm. Not only do we conclude there was no basis for disqualification of the SCPO, but each defendant fails to meet the Strickland/Fritz[1] standard. Ledbetter also has not demonstrated the Division records he sought were necessary to pursue his PCR petition sufficient to overcome the statutory presumption of confidentiality.

I.

We glean the salient facts from the motion records as to each of the orders being appealed.

A. Banks

---

[1] Strickland v. Washington, 466 U.S. 668, 694 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

On January 23, 2017, Banks pleaded guilty to first-degree robbery at a service station in Carney's Point Township. During the plea allocution before the Honorable Benjamin C. Telsey, J.S.C., Banks acknowledged that during the theft, he knowingly or purposefully placed the victims in fear of immediate bodily injury by threatening the use of a deadly weapon. Banks testified he had the opportunity to review the plea forms with his attorney, who was available to answer any of his questions.

In exchange for the plea, the State of New Jersey (State) agreed to recommend Banks for a five-year sentence with an eighty-five percent No Early Release Act (NERA)[2] disqualifier, as a second-degree offender. Judge Telsey sentenced Banks consistent with the plea agreement. Banks did not file a direct appeal.

Over four years later, Banks filed a motion seeking to disqualify the SCPO due to an alleged conflict of interest. A different trial court judge denied defendant's motion.

Banks filed a pro se PCR petition, which was denied by another trial court judge in an oral decision and December 5, 2022 order. Banks filed a

---

[2] N.J.S.A. 2C:43-7.2. NERA requires a defendant to serve at least eighty-five percent of the custodial sentence imposed for certain first- and second-degree violent crimes.

A-1766-22

notice of appeal from the denial of his PCR petition, raising the following

arguments in his merits brief:

> A. DID THE COURT ERR BY FINDING TRIAL COUNSEL PROVIDED EFFECTIVE REPRESENTATION DURING THE PRE-PLEA PORTION OF THE CASE?
>
> B. DID THE COURT ERR BY MISAPPLYING ITS DISCRETION IN DENYING THE PCR MOTION WITHOUT CONDUCTING A FULL EVIDENTIARY HEARING WHERE PETITIONER MADE A PRIMA FACIE SHOWING OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL?
>
> C. DID THE COURT ERR BY DENYING BANKS'S MOTION TO DISQUALIFY THE SCPO FROM HIS PCR CASE?

### B. Elkin

On May 31, 2015, Elkin repeatedly bludgeoned a man with a hammer while the man was laying on a couch. Six days later, the victim passed away at the hospital due to the blunt force trauma to his head. Two years later, Elkin pleaded guilty to aggravated manslaughter before Judge Telsey.

Judge Telsey sentenced Elkin in accordance with the recommended sentence under the plea agreement to fifteen years' incarceration, subject to NERA, and five years of parole supervision thereafter. At the sentencing hearing, the court found the following aggravating factors: (i) three, the risk

that Elkin will commit another offense; (ii) six, the extent of Elkin's prior criminal record and the seriousness of the present offense; and (iii) nine, the need to deter Elkin and others from violating the law.[3]  In addition, the court gave only "slight weight" to mitigating factor four, that there were substantial grounds tending to excuse or justify the conduct.[4]

Elkin did not file a direct appeal but, instead, filed a pro se petition for PCR on April 9, 2020.  Elkin also filed a motion to disqualify the SCPO from handling the PCR proceedings, which was denied in a May 4, 2022 order. Another trial court judge denied the PCR motion in a December 5, 2022 order accompanied by a written decision.  This appeal followed.  Elkin raises the following arguments on appeal:

> A.  DID THE COURT ERR BY DENYING AN EVIDENTIARY HEARING TO ELKIN ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO ADVOCATE ADEQUATELY AT SENTENCING?
>
> B.  DID THE COURT ERR BY DENYING ELKIN'S MOTION TO DISQUALIFY THE SCPO FROM HIS PCR CASE?

---

[3]  N.J.S.A. 2C:44-1(a)(3), (6), (9).

[4]  N.J.S.A. 2C:44-1(b)(4).

## C. Ledbetter

The relevant facts and procedural history are set forth in our opinion affirming Ledbetter's convictions and sentence on direct appeal, State v. Ledbetter, No. A-1527-15 (App. Div. Jan. 19, 2019) (slip op. at 2–8). We briefly summarize only the facts relevant to our disposition.

After a jury trial for charges stemming from Ledbetter's physical assault of a woman directly and through his pit bull, Ledbetter was convicted of second, third, and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1)-(3); third-degree endangering an impaired or helpless person, N.J.S.A. 2C:12-1.2(a); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4.

Ledbetter was sentenced on October 30, 2015 as a persistent offender to an aggregate sentence of nineteen years imprisonment, subject to NERA. We affirmed Ledbetter's convictions and sentence [5] and the Court denied certification. State v. Ledbetter, 239 N.J. 411 (2019).

In November 2020, Ledbetter's assigned PCR counsel filed a motion for disclosure of Division records regarding his care as a juvenile, which was denied in an order accompanied by a written decision. Ledbetter then filed an

---

[5] Ledbetter, slip op. at 1.

7                                                          A-1766-22

amended PCR petition.

In December 2021, Ledbetter's PCR counsel filed a motion to disqualify the SCPO from representing the State, which was denied in an order accompanied by a written opinion. Ledbetter's amended PCR petition was denied in a December 5, 2022 order accompanied by a written decision.

Ledbetter filed a notice of appeal, raising the following points in his merits briefs:

> A. DID THE COURT ERR BY DENYING AN EVIDENTIARY HEARING TO LEDBETTER ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN FAILING TO ENGAGE AN EXPERT WITNESS ON CANINE AGGRESSION?
>
> B. DID THE COURT ERR BY DENYING AN EVIDENTIARY HEARING TO LEDBETTER ON HIS CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN FAILING TO OBTAIN EVIDENCE OF HIS MENTAL DISABILITIES AND PRESENT IT AT SENTENCING?
>
> C. DID THE COURT ERR BY DENYING THE DEFENSE MOTION TO RELEASE DIVISON RECORDS?
>
> D. DID THE COURT ERR BY DENYING THE DEFENSE MOTION TO DISQUALIFY THE SCPO?

II.

8

We begin by outlining our standard of review on each of the issues before us. Determining whether counsel, or an entire firm or office, should be disqualified is an issue of law "subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015).

The denial of defendants' PCR petitions without an evidentiary hearing are also subject to de novo review "'of both the factual findings and legal conclusions of the PCR court.'" State v. Reevey, 417 N.J. Super. 134, 147 (App. Div. 2010) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). However, "the PCR court's determination to proceed without an evidentiary hearing" is reviewed under the abuse of discretion standard. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "Although [Rule] 3:22-1 does not require evidentiary hearings to be held on [PCR] petitions, [Rule] 3:22-10 recognizes judicial discretion to conduct such hearings."[6] State v. Russo, 333 N.J. Super. 119, 138 (App. Div. 2000).

III.

---

[6] Ledbetter's appeal of the denial of his motion for release of the Division's records is also governed under a de novo standard since his request for the records was made in furtherance of his PCR petition. State v. Nash, 212 N.J. 518, 540-41 (2013); State v. Pierre, 223 N.J. 560, 576 (2015).

A.

Defendants each argue the entire SCPO should be disqualified to prevent the appearance of impropriety because of a conflict of interest between Judge Telsey and Assistant Prosecutor Telsey[7] due to their familial relationship. We disagree the entire SCPO should be disqualified in this case simply because Judge Telsey is Assistant Prosecutor Telsey's brother-in-law. Accordingly, we affirm.

"Attorneys who serve as counsel for governmental bodies must avoid not only direct conflicts of interests, but any situation which might appear to involve a conflict of interest." In re Op. No. 415 of the Advisory Comm. on Prof'l Ethics, 81 N.J. 318, 324 (1979). To warrant disqualification, there must be a real ground for questioning the entire prosecutor's office's appearance of impropriety or a conflict of interest. See State v. Harvey, 176 N.J. 522, 529 (2003).

"[T]he 'appearance' of impropriety must be something more than a 'fanciful possibility,' and [] a claim of impropriety must have some reasonable basis." State v. Irizarry, 271 N.J. Super. 577, 597 (App. Div. 1994) (quoting

---

[7] In 2018, the relevant time period for the disqualification motions, Prosecutor Telsey's title was Assistant Prosecutor as she was not appointed to Prosecutor until 2021.

Higgins v. Advisory Comm. on Prof'l Ethics, 73 N.J. 123, 129 (1977)). "An 'appearance of impropriety is determined not from the perspective of the attorney involved but from the public's vantage.'" Harvey, 176 N.J. at 531 (quoting In re Op. No. 653 of the Advisory Comm. on Prof'l Ethics, 132 N.J. 124, 130 (1993)).

Existing decisional law establishes requests for disqualification of an entire prosecutor's office are closely scrutinized and rarely granted. Id. at 529 (reversing a trial court order disqualifying a prosecutor's office from handling a petition for PCR based on allegations of prosecutorial misconduct, primarily concerning one prosecutor); State v. Marshall, 123 N.J. 1, 176-78 (1991), cert. denied, 507 U.S. 929 (1993) (declining to disqualify a prosecutor's office based on a claim that the office had an "interest in vindicating its management of the discovery file" in a prior related case); Irizarry, 271 N.J. Super. at 591, 601 (holding that an entire prosecutor's office need not be disqualified where some members of the office were familiar with immunized testimony or could be called as witnesses); see also State v. Marshall, 148 N.J. 89, 285, cert. denied, 522 U.S. 850 (1997) (declining to disqualify the Attorney General from representing the State where the Director of the Division of Criminal Justice was First Assistant Prosecutor at the time of remand and defendant

11

alleged prosecutorial misconduct).

In a combined written decision, the trial court set forth a comprehensive analysis denying each of the defendants' disqualification motions, finding the involvement of the SCPO did not create an appearance of impropriety or conflict of interest. The trial court highlighted that the facts underpinning each of the PCR petitions occurred prior to 2018, whereas Assistant Prosecutor Telsey did not take office until 2021. Although the trial court acknowledged the Attorney General's Office found no conflict of interest, the decision relied primarily on the attenuation of Salem County Assistant Prosecutor Telsey's appointment, the Assistant Prosecutor's lack of prior representation or personal involvement in any of these cases, and lack of "side-switching."

The trial court found disqualification of the entire SCPO was not warranted because the additional measures taken by the SCPO, as well as the Supreme Court of New Jersey, cured any potential for an appearance of impropriety or actual conflict. Assistant Prosecutor Telsey was screened off from each of the defendants' PCR cases and the Supreme Court issued an order precluding Judge Telsey's involvement.[8]

---

[8]  The order issued by the Supreme Court precluding Judge Telsey's involvement was not included in the appendices. There is also no document in

In addition to the fact that Assistant Prosecutor Telsey was properly screened and has no role in defendants' matters, the Attorney General's broad supervision over county prosecutors also prevents the need to disqualify the entire SCPO. State v. Smith, 478 N.J. Super. 52, 64 (App. Div. 2024) ("[w]hile the county prosecutor supervises the county office, the county prosecutors and the county prosecutors' offices are ultimately subject to the Attorney General's supervision and control."); N.J.S.A. 52:17B-103; see also Yurick v. State, 184 N.J. 70, 78-79 (2005) (explaining the Attorney General's supervisory powers over county prosecutors). Should the need arise, "the Attorney General may supervise a county prosecutor and his or her office and, where appropriate, decide to step in and take over a prosecution." Smith, 478 N.J. Super. at 65; N.J.S.A. 52:17B-106 to 107; Wright v. State, 169 N.J. 422, 438 (2001) (explaining "the Attorney General's supersedure power appears to have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' 'criminal business'") (quoting Coleman v. Kaye, 87 F.3d 1491, 1501 (3d Cir. 1996)). The Attorney General's supervisory authority over a county prosecutors' office, provides

---

the record evidencing actions taken to screen off the Assistant Prosecutor. However, the parties do not dispute these facts.

additional insurance against conflicts of interest or an appearance of impropriety.

For these reasons we affirm the denial of defendants' motion to disqualify the SCPO.

B.

We turn to consider the substance of defendants' PCR petitions. Based on our review of each petition under prevailing law, we affirm each of the orders denying PCR relief.

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of this test, the defendant must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Defendant must also show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

14

The mere filing of a PCR claim does not entitle the defendant to an evidentiary hearing since they "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); see also R. 3:22-10(e)(2) (stating that a court shall not hold an evidentiary hearing "if the defendant's allegations are too vague, conclusory or speculative"). An evidentiary hearing is only appropriate pursuant to Rule 3:22-10(b), when the defendant has presented a prima facie claim, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. State v. Porter, 216 N.J. 343, 355 (2013). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Ibid. (quoting R. 3:22-10(b)).

i. Banks

Banks argues his attorney provided ineffective assistance by failing to review key pieces of discovery with him until after the plea agreement was signed, providing inadequate pre-plea representation.

We conclude on de novo review plea counsel's performance was not ineffective under Strickland/Fritz. Banks's completion of the plea forms and

15                                                                A-1766-22

acknowledgement under oath at the plea colloquy belies his claim. On the plea form, Banks acknowledged understanding the charges against him, the rights he was waiving by pleading guilty, and his sentencing exposure both under the plea agreement and if he were to proceed to trial. Banks further swore under oath he was satisfied with his attorney's advice and had no questions about the plea.

During the plea hearing, Banks further testified to reviewing the plea forms with counsel who was available to answer any questions he had throughout the proceedings. Banks also swore under oath that the answers he provided to the court were truthful and that no one forced him to plead guilty. Banks's completion of the plea forms, and sworn testimony at the plea hearing, were not mere perfunctory gestures but rather, were representations to the court that he understood the consequences of the plea agreement. See State v. Simon, 161 N.J. 416, 444 (1999) ("[s]olemn declarations in open court [when entering a plea] carry a strong presumption of verity") (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

While the State concedes Banks was not specifically asked whether counsel reviewed discovery with him, Banks acknowledged under oath he was satisfied with his counsel who answered all his questions prior to the plea

16

agreement being entered. Thus, Banks fails to meet the standard set forth under the first <u>Strickland/Fritz</u> prong based on his own testimony under oath at the plea allocution.

Even if Banks had met the standard set forth in the first prong of the <u>Strickland/Fritz</u> test, he does not satisfy the second prong. Banks does not make any argument as to how review of the discovery would have reasonably altered the outcome of his plea hearing. Banks also does not argue he would have insisted on going to trial had he been provided with discovery prior to his plea agreement considering the evidence against him, which included an admission and statement of his co-defendant. Absent a showing the outcome of the proceedings would have been different, Banks fails to meet the second prong of the <u>Strickland/Fritz</u> standard. Thus, we affirm.

## ii. Elkin

After our de novo review, we are unpersuaded that Elkin's counsel was ineffective by failing to present evidence of certain mitigating factors at his sentencing hearing. We affirm.

Elkin's assertion that his attorney failed to argue at sentencing there was evidence of his diminished capacity, based on his mental health and substance abuse history, is not grounded in the record. Prior to the imposition of Elkin's

17

sentence, counsel advised the court of Elkin's mental health status, and the evaluations conducted by both parties.  The sentencing judge was also aware of Elkin's mental health history since that judge presided over the motion practice related to the mental health evaluations.  As a result of Elkin's mental health evaluation, motion practice, and plea negotiations, the State ultimately agreed to a recommended sentence of fifteen years, far less than Elkin's maximum exposure of life in prison if convicted of murder at trial.

The record also establishes that the sentencing judge was aware of Elkin's restitution to the victim's family and Elkin's youth at the time of the offense.  The same judge heard Elkin's agreement to pay restitution for funeral expenses as part of the plea.  That judge had the presentence report and ultimately did not find Elkin's age to be a relevant factor on sentencing.

Absent a showing that the State would have further reduced his sentence based on an additional showing of his diminished capacity, Elkin fails to meet the standard set forth in the second Strickland/Fritz prong.  Elkin has not demonstrated how any further argument by counsel would have affected his sentence since his expert did not opine that his mental health conditions vitiated the mens rea for the criminal acts he was charged with.  Compare State v. Briggs, 349 N.J. Super. 496, 504 (App. Div. 2002) (suggesting that mental

18                                                              A-1766-22

health conditions could be "highly relevant" to mitigating factor four where the defendant was convicted of stabbing her former husband because of "continuous physical, sexual and psychological abuse committed by the victim" and "post-traumatic distress disorder, consistent with and related to 'severe and chronic' spousal abuse"). It is also unlikely the State would have reduced Elkin's sentence even further where plea negotiations had already considered his mental health history.

Similarly, Elkin also fails to cite to any expert evidence correlating his youth to the offenses he committed. Even if Elkin's age was an appropriate mitigating factor that should have been specifically referenced, because he was being sentenced pursuant to a plea agreement afforded a presumption of reasonableness, and Elkin was already being sentenced based on a lesser charge, it is unlikely an argument pertaining to his youth as a mitigating factor would have affected the outcome of his sentence.

Thus, we affirm.

### iii. Ledbetter

Ledbetter does not satisfy the first Strickland/Fritz prong since counsel was not ineffective in failing to call a canine behavior expert at trial, making a reasonable strategic decision to challenge Ledbetter's identification at the

A-1766-22

scene of the attack. Presenting a qualified canine behavior expert would have been a concession that Ledbetter was the person handling the dog in contradiction of trial counsel's strategy to challenge the identification of his client.

"[A] defense attorney's decision [of] which witnesses to call to the stand is 'an art' and a court's review of such a decision should be 'highly deferential[.]'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 693). The failure to present witnesses whose "testimony would have served only to undermine the entire defense strategy" is not deficient performance. State v. Coruzzi, 189 N.J. Super. 273, 322 (App. Div. 1983).

Ledbetter also fails to show a reasonable probability that trial counsel's failure to introduce an expert on canine aggression would have altered the outcome of the proceeding under the second Strickland/Fritz prong. We affirm.

## IV.

We also affirm the PCR court's denial of Ledbetter's motion seeking the discovery of Division records.

N.J.S.A. 9:6-8.10(a)(a) sets forth that "[a]ll records of child abuse reports . . . all information obtained by the Department of Children and

Families in investigating such reports . . . shall be kept confidential and may be disclosed only under . . . circumstances expressly authorized under subsections" (b) through (g).  A court may authorize disclosure "upon its finding that access to such records may be necessary for determination of an issue before it . . . ."  N.J.S.A. 9:6-8.10(a)(b)(6).

In determining whether disclosure is appropriate, "[c]ourts must weigh the conflicting constitutional rights of criminal defendants to a fair trial and the confrontation of witnesses, against the State's compelling interest in protecting child abuse information and records."  In re Z.W., 408 N.J. Super. 535, 539 (App. Div. 2009) (citing Pa. v. Ritchie, 480 U.S. 39, 59-61 (1987)).  Trial courts must consider whether disclosure is "essential to the resolution of any issue before the court, as well as whether the information contained in those records is available from any other source through diligent investigation on the part of the defendant."  Id. at 539-40 (quoting State v. Cusick, 219 N.J. Super. 452, 457-59 (App. Div. 1987)).

Ledbetter's reliance on Marshall and Bellamy to support his position that the statutorily confidential Division records should have been released is misplaced.  In Marshall, the defendant sought to inspect the prosecution's entire file, not the Division's, relating to his trial.  Marshall, 148 N.J. at 270.

Unlike in <u>Bellamy</u>, Ledbetter did not seek Division records for sentencing, but for a collateral proceeding in the hopes they would reveal information potentially favorable to his yet-to-be formulated PCR claims. <u>State v. Bellamy</u>, 468 N.J. Super. 29, 48-49 (App. Div. 2021).

Since Ledbetter was thirty-one years old at the time of the offense and thirty-three years old at the time of sentencing, the need for Division records regarding defendant's juvenile care to pursue PCR was tenuous at best. Ledbetter is seeking highly confidential and statutorily protected documents from the Division that are unlikely to relate to his current offense because he was well beyond childhood at the time of the attack. There is no prima facie evidence in the record that would link Ledbetter's childhood to the crimes for which he was sentenced.

Records pertaining to Ledbetter's own mental health could have been obtained through other methods. For example, the certification of Ledbetter's mother stated he was in the care of his grandmother for a portion of his childhood, he received treatment for attention deficit hyperactivity disorder, and took special education classes. Thus, Ledbetter had an avenue to obtain the information through less intrusive sources by using diligent efforts.

We affirm.

Defendants' merits briefs do not address the excessive sentencing issue raised on appeal. Accordingly, we consider the issue abandoned. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011). Even if it were not abandoned, a claim for excessive sentence is not cognizable in a PCR petition. State v. Acevedo, 205 N.J. 40, 45 (2011) (holding "mere excessiveness of [a] sentence otherwise within authorized limits . . . can only be raised on direct appeal" and excessiveness of a sentence does not pertain to sentence "legality" and is "not cognizable on PCR, or under . . . Rule 3:21-10(b)(5)").

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION