160 N.J. Super. 452 (1978)
390 A.2d 629
BOARD OF TRUSTEES OF MERCER COUNTY COMMUNITY COLLEGE, A BODY CORPORATE OF THE STATE OF NEW JERSEY, AND BOARD OF EDUCATION OF THE VOCATIONAL SCHOOLS IN THE COUNTY OF MERCER, PLAINTIFFS-APPELLANTS,
v.
ARTHUR R. SYPEK, SR., COUNTY EXECUTIVE OF THE COUNTY OF MERCER, AND ALBERT E. DRIVER, EUGENE V. HOWARD, GILBERT W. LUGOSSY, BARBARA H. SIGMUND, PAUL J. SOLLAMI, JOSEPH E. TIGHUE AND JOHN S. WATSON, MEMBERS OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided June 21, 1978.
*453 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Garrett M. Heher argued the cause for appellant Board of Trustees of Mercer County Community College (Messrs. Smith, Stratton, Wise & Heher, attorneys; Ms. Ann Reichelderfer on the brief).
Mr. William C. Baggitt argued the cause for appellant Board of Education of the Vocational Schools in the County of Mercer.
Mr. Harvey L. Stern, Mercer County Counsel, argued the cause for respondents (Mr. Richard W. Raines, Assistant County Counsel).
Mr. Myron H. Gottlieb argued the cause for the amicus curiae Council of County Colleges (Messrs. Kessler, Tutek and Gottlieb, attorneys).
Mr. Edward J. Butrym argued the cause for the amici curiae New Jersey Education Association, Mercer County Community College Faculty Association, Mercer County Vocational Education Association and the Association of New Jersey College Faculties (Messrs. Ruhlman and Butrym, attorneys).
*454 The opinion of the court was delivered by BISCHOFF, J.A.D.
The issue raised by this appeal is whether the Optional County Charter Law (Charter Law), N.J.S.A. 40:41A-1 et seq., supersedes legislation under Title 18A, "Education," pertaining to county colleges, N.J.S.A. 18A:64A-1 et seq., and vocational schools, N.J.S.A. 18A:54-1 et seq., where they are inconsistent. The trial judge, in an opinion published at 151 N.J. Super. 1 (Law Div. 1977), held that it did, and plaintiffs appeal.
The factual background is undisputed and is succinctly stated in the opinion of the trial judge as follows:
Plaintiff [Board of Trustees of Mercer County Community College] was established in 1966 pursuant to N.J.S.A. 18A:64A-1 et seq., and plaintiff [Mercer County Vocational School] (Vo-Tech) was organized in 1968 under N.J.S. 18A:54-1 et seq. In September 1972 the New Jersey Legislature adopted the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq. In accordance with that act, a charter study commission was formed in Mercer County; sometime thereafter a formal report was submitted by that commission recommending the County Executive Plan under the Charter Act. Subsequently, the voters of Mercer County adopted this plan and, as a result, in April 1976 an ordinance was passed on first reading, effective May 1, 1976, adopting an Administrative Code pursuant to the County Executive Plan. This ordinance contains provisions which substantially alter both the existing structure of the two plaintiffs and the relationship between those plaintiffs and the county. The Code provides for considerable administrative control by the county; the board of school estimate is abolished, and the total effect of the implementation of this Code is to reduce plaintiffs from their autonomous status to that of county agencies and to place complete control in the hands of the Board. [Bd. of Trust. of Mercer Cty. Comm. Coll. v. Sypek, 151 N.J. Super. 1, at 4, 5 (Law Div. 1977)]
The Board of Trustees of Mercer County Community College (plaintiff) filed a complaint against the county executive of Mercer County and the board of chosen freeholders (board) of that county, wherein it sought:
(a) A determination that it was a separate political subdivision of the State of New Jersey, independent of the County of Mercer, a unit of government within the meaning *455 of N.J.S.A. 40:41A-28 and, therefore, unaffected by the adoption of the Charter Law by the County of Mercer;
(b) An injunction against defendants in any way attempting to subject plaintiff to the Administrative Code adopted by the board, and,
(c) An injunction against the county executive of Mercer County restraining him from exercising any authority given him by the Administrative Code of the county over plaintiff with respect to plaintiff's operation and activities under chapter 64A of Title 18A of the Revised Statutes of New Jersey.
The Board of Education of the Vocational Schools in the County of Mercer (Vo-Tech) joined in the action as an additional plaintiff, seeking the same relief, relying on Chapter 54 of Title 18A.
The trial judge stated the issue before him to be:
* * * [W]hether plaintiffs are separate political subdivisions of the State, governed by Title 18A and not subject to the Charter Act, or whether the Charter Act brings these plaintiffs within the jurisdiction and control of the county. [Bd. of Trust. of Mercer Cty. Comm. Coll. v. Sypek, supra at 5]
He concluded:
* * * [T]hat both the Mercer County Community College and the County Vocational Schools come within the ambit of the Charter Act; that they are not excluded as "units of government"; that they are "agencies" within the meaning of the act, and that legislation under Title 18A that is inconsistent with the Charter Act is superseded by the Charter Act. [at 13]
We disagree and reverse.
The Charter Law was enacted in 1972. Its goal was to give counties greater control over their own internal structure and fiscal affairs. The stated intent of the law is to
* * * [E]nable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient and expeditious manner, *456 and absent a clear legislative declaration to the contrary, without regard to organizational, structural or personnel provisions contained in the legislation mandating such duty. [N.J.S.A. 40:41A-26]
And, while the law confers upon each county electing to adopt the Law the power to
Organize and regulate its internal affairs; create, alter and abolish offices, positions and employments and define the functions, powers and duties thereof; establish qualifications for persons holding offices, positions and employments; and provide for the manner of their appointment and removal and for their term, tenure and compensation. [N.J.S.A. 40:41A-27(a)]
and, further,

* * * * * * * *
Nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute providing that such abolition or consolidation shall not alter the obligation of the county to continue providing the services previously provided by such abolished or consolidated agency. [N.J.S.A. 40:41A-26]
its powers are limited by N.J.S.A. 40:41A-28, which provides:
Nothing in this act shall be construed to impair or diminish or infringe on the powers and duties of municipalities and other units of government under the general law of this State. It is the intent of this act only to permit municipalities and other units of government to employ services and facilities of the county for more effective, efficient, and adequate provision of services if and when such units may deem it desirable to do so. Municipalities are and shall remain the broad repository of local police power in terms of the right and power to legislate for the general health, safety and welfare of their residents. [Emphasis supplied]
A statement of the general powers conferred appears in N.J.S.A. 40:41A-30, as follows:
The grant of powers under this act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed *457 as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and to alter or abolish its agencies, subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government.
Based on the need to develop effective services to meet problems which cross municipal boundaries and which cannot be met effectively on an individual basis by the municipalities, the State, or other units of government, this act shall be construed as intending to give the county power to establish innovative programs and to perform such regional services as any unit that has the legal right to perform such service for itself may determine, in its own best interest, to have the county perform on a contractual basis.
The specific issue thus presented is whether county colleges and vocational schools, which are not specifically mentioned in the Charter Law, are "agencies" for the purpose of that law and thus subject to the control, reorganization and even abolition by the Board, or whether they are "other units of government" whose powers and duties are not impaired, diminished or infringed upon by the Charter Law.
The legislative history of the Charter Law and its purpose and objectives has been the subject of recent and adequate discussion in reported cases, and we will not retread the same ground. In re Salaries of Probation Officers of Hudson Cty. 1976-1977, 158 N.J. Super. 363, 366 (App. Div. 1978); Union Cty. Park Comm'n v. Union Cty., 154 N.J. Super. 213, 221-225 (Law. Div. 1976), aff'd o.b. 154 N.J. Super. 125 (App. Div.), certif. den. 75 N.J. 531 (1977); Union Cty. v. State, 149 N.J. Super. 399, 412-413 (Law Div. 1977); Amer. Fed'n State, Cty., Mun. Emp. v. Hudson Welf. Bd., 141 N.J. Super. 25, 30-34 (Ch. Div. 1976). It has also been analyzed in detail by the trial judge in his published opinion, Bd. of Trust of Mercer Cty. Comm. Coll. v. Sypek, supra, 151 N.J. Super. at 9.
The courts in those cases applied various principles of statutory construction to reach conclusions that:
(1) The Union County Mosquito Control Extermination Commission created pursuant to N.J.S.A. 26:9-13 et seq., *458 could be abolished under the authority given the county pursuant to adoption of a charter under the Charter Law and its function transferred to a new agency created as part of the County Administrative Code. Union Cty. v. State, supra.
(2) County welfare boards, established pursuant to N.J.S.A. 44:7-7, could be abolished and their functions and duties transferred to new agencies created by the county pursuant to authority granted the county by the Charter Law. Amer. Fed'n State, Cty., Mun. Emp. v. Hudson Welf. Bd., supra.
(3) More recently in the case of Union Cty. Park Comm'n v. Union Cty., supra, it was held that a park commission, created as a result of a public referendum and operating pursuant to N.J.S.A. 40:37-96 through N.J.S.A. 40:37-174, may be abolished and its functions transferred to other agencies created by the adoption of the County Administrative Code pursuant to the Charter Law.
(4) A different result was reached in In re Salaries of Probation Officers of Hudson Cty. 1976-1977, supra, where the court held that the Charter Law did not repeal or affect, in any way, the method of fixing salaries of probation officers as established by N.J.S.A. 2A:168-5 and N.J.S.A. 2A:168-8.
None of the foregoing cases reach the precise issue presented here, and our conclusion is rested on two separate and distinct bases.
We turn our attention, first, to the case of Atlantic Comm. College v. Civil Service Comm'n, 59 N.J. 102 (1971), where the issue before the court was whether nonprofessional and noninstructional employees of a county community college were subject to Civil Service laws when the counties in which the colleges were situated have adopted Civil Service.
N.J.S.A. 18A:64A-12(g) gives to the board of trustees of a county college the power: *459 To appoint or employ such other officers, agents and employees as may be required to carry out the provisions of this chapter and to fix and determine their qualifications, duties, compensation, terms of office and all other conditions and terms of employment and retention.
The court held that since the County College Law was enacted subsequent to the Civil Service Law and is in conflict with it, the Legislature intended to exclude county college employees from Civil Service law. Atlantic Comm. College v. Civil Service Comm'n, supra at 112-113. In the course of its opinion the court said:

* * * * * * * *
[W]e are not persuaded that county colleges are agencies of county government. Rather, we believe that they are separate political subdivisions which serve a separate purpose and operate apart from the governing bodies of the counties in which they are situated. * * *. [Id. at 107]
A similar broad characterization describing vocational schools appears in Denville Tp. Comm. v. Morris Cty. Bd. of Ed., 59 N.J. 143 (1971), where the court said:

* * * * * * * *
It may be accepted that the County Board of Vocational Education is a distinct statutory entity designed to operate essentially independent of the Denville governing body in the matter of vocational education. * * * [at 147-148]
While the statements are dicta and were made prior to the passage of the Charter Law, we must presume that they were made with full knowledge of their inherent implications. We further assume that the Legislature was familiar with that construction of the Supreme Court at the time it enacted the Charter Law the following year (L. 1972, c. 154, effective September 19, 1972) and acquiesced in it. Brewer v. Porch, 53 N.J. 167 (1969); Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968); Miller v. Hudson Cty. Bd. of Chosen Freeholders, 10 N.J. 398, 413 (1952). If the Legislature had intended to include the county colleges *460 or vocational schools within the scope of the Charter Law and thus repeal or supersede portions of chapter 64A of Title 18A and chapter 54 of the same Title, such an intention should have been evidenced by a clear, definite statement to that effect.
The Charter Law was extensively amended by L. 1975, c. 84, effective May 5, 1975, and there were amendments to chapter 64A of Title 18A by L. 1974, c. 89, § 1 et seq., effective August 29, 1974 (N.J.S.A. 18A:64A-30 et seq.), creating a Community College Agency. Both the original Charter Law and the amendments to it, as well as the creation of the Community College Agency, occurred after the Supreme Court's pronouncements in the cases of Atlantic Comm. Coll. v. Civil Service Comm'n, supra, and Denville Tp. Comm. v. Morris Cty. Bd. of Ed., supra, and no mention is made in any of the statutes of any disagreement with the determination that county colleges are separate political subdivisions or that vocational schools are distinct entities designed to operate independently in matters of vocational education. A legislative intent that both types of educational institutions should continue to exercise the broad powers conferred upon them without impairment, diminution or infringement by the Charter Law may be inferred. Brewer v. Porch; Matawan v. Monmouth Cty. Tax Bd.; Miller v. Hudson Cty. Bd. of Chosen Freeholders, all supra.
If the characterization of county colleges and vocational schools as separate political subdivisions was contrary to the intent of the Legislature, it may be assumed that this misapprehension would have been corrected by a definite statement to the contrary. Brewer v. Porch; Matawan v. Monmouth Cty. Tax Bd.; Miller v. Hudson Cty. Bd. of Chosen Freeholders, all supra.
A more basic reason for our determination that the Charter Law does not alter the relationship between the county colleges and vocational schools on the one hand and the county on the other results from a broad overview of Title 18A. This Title contains an extensive, integrated *461 legislative scheme with established control and supervision of all education in the State. Chapter 64A, Title 18A, relating to county colleges, is an essential part of this legislative plan, as is chapter 54 relating to vocational schools. This plan for education has been carefully formulated over the years and has a firm constitutional foundation. N.J. Const. (1947), Art. VIII, § IV, par. 1. Robinson v. Cahill, 69 N.J. 449 (1976); Belvidere Bd. of Ed. v. Bosco, 138 N.J. Super. 368, 374 (Law Div. 1975). It embodies a policy of independence and freedom from political control for all forms of public education, Botkin v. Westwood, 52 N.J. Super. 416, 427 (App. Div.), app. dism. 28 N.J. 218 (1958)[1], including public higher education (N.J.S.A. 18A:62-1).
In dealing with such a basic subject and the comprehensive carefully formulated plan expressed in Title 18A, we should not lightly infer that the Legislature intended to alter or repeal any portion of it. Brewer v. Porch, supra. If the Legislature intended to alter, in any material respect, this comprehensive plan, we assume it would address the issue directly and not rely upon implication for an expression of its intention.
Whether the county should be vested with authority to control, alter, diminish or abolish county colleges and vocational schools is an important policy question. In our judgment, a policy question of that significance lies in the legislative domain and should be resolved by the Legislature. A court should not find such power in the county unless the statute under consideration confers it expressly or by unavoidable implication. In this case the Charter Law does not expressly confer the authority to act with respect to *462 the county colleges or the vocational schools and, in our judgment, the statutory language does not justify a judicial determination that power of such magnitude resides there by implication. Burl. Cty. Evergreen Pk. Mental Hosp. v. Cooper, 56 N.J. 579, 598 (1970).
Reversed and remanded for the entry of a judgment, including an injunction, consistent with this opinion.
NOTES
[1] While the cited authorities are concerned primarily with issues involved in providing a "thorough and efficient system of free public schools" for children between the ages of 5 and 18, the legislative plan expressed in Title 18A embraces policy considerations and issues of far greater magnitude.