814 A.2d 1146

BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, PLAINTIFF–RESPONDENT, v. COUNTY EXECUTIVE OF THE COUNTY OF HUDSON, DEFENDANT–RESPONDENT, AND BOARD OF EDUCATION OF THE HUDSON COUNTY SCHOOLS OF TECHNOLOGY, DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND REVEREND EDWARD ALLEN AND THOMAS MURPHY, AND DEFENDANTS–APPELLANTS, AND JOHN DOE AND XYZ CORPORATION, DEFENDANTS, AND MICHAEL GALLO AND JOHN MAUTONE, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 8, 2003—Decided February 3, 2003.

244

Before Judges KING; WEFING and FUENTES.

*Karen F. DeSoto* argued the cause for appellants.

*Edward J. Florio* argued the cause for respondent Board of Chosen Freeholders of the County of Hudson (*Sarkisian, Florio & Kenny,* attorneys; Mr. *Florio* and *Nita Raval,* on the brief).

*Donato Battista* argued the cause for respondent Thomas A. DeGise, County Executive of the County of Hudson (respondent joined in the brief of respondents Michael Gallo and John Mautone).

*Cindy Nan Vogelman* argued the cause for respondents Michael Gallo and John Mautone (*Chasan, Leyner, Bariso & Lamparello,* attorneys; Ms. *Vogelman,* on the brief).

*John P. Lacey* argued the cause for respondent/cross-appellant Board of Education of the Hudson County Schools of Technology (*Connell Foley,* attorneys; Mr. *Lacey,* of counsel and on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

In this appeal we are called upon to consider whether the County Executive of Hudson County was required to seek the advice and consent of the Board of Chosen Freeholders of Hudson County ("Freeholders") prior to making appointments to the Board of Education of the Hudson County Schools of Technology ("Board of Education"). The trial court concluded that the County Executive was required to seek such advice and consent and set aside two appointments that had been made without such advice and consent. We have concluded that the trial court erred in such determination; we reverse the trial court's order and direct the reinstatement of the affected individuals.[1]

---

[1] Because of the public interest involved, we issued a three-judge order of disposition announcing this result after the matter was orally argued before us and noted that our opinion would follow in due course. We now set forth our reasons in support of the determination we have reached.

## I.

Hudson County is a county of the first class and it has adopted the county executive form of government under the Optional County Charter Law. *N.J.S.A.* 40:41A–31 to –44. At the time this action commenced, Bernard M. Hartnett, Jr. was the County Executive for Hudson County. By letters dated October 22, 2002, Hartnett notified the Board of Education of his appointment, pursuant to *N.J.S.A.* 18A:54–16, of Thomas Murphy and Rev. Edward Allen to four-year terms as members of the Board, effective November 1, 2002. Murphy and Allen were appointed to replace John Mautone and Michael Gallo, respectively, whose terms as members of the Board of Education were to expire on October 31, 2002.

The Freeholders asserted that such appointments required their advice and consent under *N.J.S.A.* 40:41A–37. A complaint and order to show cause challenging these appointments were filed on October 30, 2002. On November 4, 2002, the trial court issued the order to show cause but, because the Freeholders had not yet passed a resolution authorizing this legal challenge, denied the request to enjoin the Board of Education from conducting a reorganization meeting scheduled for that day at which Murphy and Allen would take their seats. The trial court set a return date of November 22, 2002. The Board of Education met thereafter and Murphy and Allen took the oath of office and were seated as members. The Board then proceeded with its regularly scheduled business.

November 5, 2002 was Election Day. Hartnett was a candidate for re-election as County Executive but was defeated by his opponent, Thomas A. DeGise. DeGise was sworn in as County Executive prior to the November 22 return date of the order to show cause. When counsel for DeGise appeared before the trial court on that return date, he adopted the position of the Freeholders, that appointments by the County Executive to the Board of Education required the advice and consent of the Freeholders. During the course of the argument, counsel for the Board of

Education and Murphy and Allen stressed to the trial court that for at least the twelve years preceding Hartnett's action, no appointment to the Board of Education by Hartnett's predecessor as County Executive had been submitted to the Freeholders for their advice and consent.

Following argument, the trial court gave an oral opinion in which it concluded that the Freeholders were required to give their advice and consent to such appointments and that the appointments of Murphy and Allen were invalid as a result of Hartnett's failure to seek such advice and consent. In the order which the trial court executed on December 2, 2002, it declared their offices vacated but specified that its Order was effective as of November 22, 2002, would not have any retroactive effect and could "not be used to disturb or invalidate any actions previously taken by the Board of Education of the Hudson County Schools of Technology, including any matters on which defendants Allen or Murphy voted." The trial court denied a request for a stay of its order. DeGise promptly appointed Thomas Mautone and Michael Gallo to fill the seats the trial court had declared vacant and the Freeholders duly gave their advice and consent.

On December 5, 2002, Murphy and Allen sought permission to proceed on an emergent basis in this court to prevent the Board of Education from meeting at its next regularly scheduled meeting, to be held on December 10, and seating Mautone and Gallo in their stead. On December 6, the court held a telephone conference call with the attorneys then involved in the matter and learned that the two seats in question were not necessary to constitute a quorum for the Board of Education. Rather than enjoin the Board of Education from meeting, with the attendant risk of disrupting public business, this court entered an order restraining Murphy and Allen from participating in that meeting as well as restraining the Board from acting to seat Mautone and Gallo. The order directed the parties to appear before this court on its next regularly scheduled day for argument, December 11, to consider further the request for injunctive relief. In addition, we

permitted counsel for Mautone and Gallo to participate in the matter. Following that argument, we entered an order accelerating the appeal and continued the stay previously imposed.

## II.

*N.J.S.A.* 18A:54–16 sets forth the method of appointment to boards of education of county vocational schools.[2] It calls for a board of education comprised of the county superintendent of schools and four appointed members. It further provides, however, that a county of the first class which has adopted a form of governance under the Optional County Charter Law may pass an ordinance increasing the size of the board from four to seven. Hudson County has elected to increase its board accordingly. The statute also provides in pertinent part:

> In counties of the first class which, by ordinance, have established a board consisting of seven persons to be appointed, the seven appointive members shall be appointed by the chief elected executive officer of the county. In all other counties the four appointive members of the board shall be appointed by the chief elected executive officer of the county, or the director of the board of chosen freeholders, with the advice and consent of that board, as appropriate to the appointment procedures established by the form of government of the county.

*N.J.S.A.* 40:41A–37, on the other hand, sets forth the powers of an elected county executive. Under subsection (b) of the statute, the county executive

> with the advice and consent of the [Freeholders], shall appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities.

After reviewing these statutes, the trial court concluded there was no rational purpose to be served by requiring certain appointments by the County Executive to be made with advice and consent of the Freeholders and dispensing with that requirement in the case of appointments to the Board of Education. According to the trial court, the "spirit of the law" called for the Freeholders

---

[2] In Hudson County, the vocational schools operate under the name "schools of technology."

to have the power of advice and consent over appointments by the County Executive to the Board of Education. We are satisfied that the trial court, by adopting this approach, took too much upon itself.

We consider *N.J.S.A.* 18A:54–16 to be clear on its face. The Legislature, in enacting this statute, did not make the County Executive's power of appointment subject to the Freeholders' advice and consent and we see no basis to transport the limitations of *N.J.S.A.* 40:41A–37 into *N.J.S.A.* 18A:54–16. Where the plain meaning of a statute is clear and unambiguous, that meaning is to be given effect absent a specific indication of legislative intent to the contrary. *Munoz v. New Jersey Auto. Full Ins. Underwriting Ass'n.,* 145 *N.J.* 377, 678 *A.2d* 1051 (1996). A court should interpret and enforce the legislative will as written and not, under the guise of construction, substitute a different meaning, even though the alternative may, to some, seem preferable. *State Bd. of Medical Examiners v. Warren Hospital,* 102 *N.J.Super.* 407, 246 *A.2d* 78 (1968), 104 *N.J.Super.* 409, 250 *A.2d* 158 (App.Div.), *certif. denied,* 54 *N.J.* 100, 253 *A.2d* 548 (1969).

> In any case involving application of a statute, we must construe the plain meaning of the statute and apply it to the facts. The meaning of a statute first must be sought in the language in which it is framed and, if it is plain, our sole function is to enforce it according to its terms. When a statute is clear and unambiguous on its face, it is not open to construction or interpretation. We may not disregard plain statutory language to replace it with an unenacted legislative intent....
>
> [*Dempsey v. Mastropasqua,* 242 *N.J.Super.* 234, 238, 576 *A.2d* 335 (App.Div.1990) (citations omitted).]

Indeed, in many ways, this action is an illustration of why the County Executive's power of appointment to the Board of Education should not be subject to the advice and consent of the Freeholders. It is more than apparent that the present action is the result of a political dispute between former County Executive Hartnett and the Freeholders. Seats upon the Board of Education, however, should not be prizes within such political struggles and the ability of the Board to fulfill its vital educational responsibilities should not be hampered by such disputes.

The Legislature has taken steps to immunize such boards from political disputes. It has, for example, specified that no more than two individuals serving on four-member boards can be members of the same political party. *N.J.S.A.* 18A:54–16. An analysis which places board seats in the political arena runs counter to that legislative intent.

### III.

■ Having had the benefit of further briefing and oral argument, we are satisfied that there is an additional reason why the County Executive is not required to seek the advice and consent of the Freeholders to appointments to this Board of Education. *N.J.S.A.* 40:41A–37 confers upon the Freeholders the power to advise and consent with regard to appointments to "county boards, commissions and authorities." It is our judgment that this Board of Education is not a county board, commission or authority and thus it falls wholly beyond the purview of *N.J.S.A.* 40:41A–37.

We acknowledge, in fairness to the trial court, that this argument was not made below and thus the trial court did not have the opportunity to pass upon it. The Board of Education has raised the question for the first time on appeal. Certainly, the Board should be aware of the nature of its legal status and should have addressed the question to the trial court in the first instance. The parties, however, have argued the merits of that position before us. We see no benefit in invoking the discretion vested in us to decline to consider an argument presented for the first time on appeal. *Nieder v. Royal Indemnity Ins. Co.*, 62 *N.J.* 229, 300 A.2d 142 (1973). Having had the opportunity to consider the question, we are satisfied that both statute and case law support the conclusion that the Board of Education is not a county board and, in consequence, the power of the County Executive to appoint the members of the Board of Education is not subject to the advice and consent of the Freeholders.

The Legislature has created two statutory methods for the establishment of vocational schools within a county, *N.J.S.A.*

18A:54–12 and –13. *N.J.S.A.* 18A:54–13 does not bear on the present situation for it deals solely with counties having a population that do not exceed 100,000. Under *N.J.S.A.* 18A:54–12, on the other hand, the first step toward the establishment of county vocational schools is a resolution passed by the State Board of Education that a need exists within that county for vocational schools. Further, it is the State Board of Education that is vested with the power to prescribe rules for the organization, management and control of county vocational schools. *N.J.S.A.* 18A:54–21.

In 2000, the Legislature passed the Educational Facilities Construction and Financing Act as one part of the State's obligation to provide a "thorough and efficient" education in all school districts in the State. *N.J.S.A.* 18A:7G–1 to –44. Within that enactment, the Legislature included county vocational schools such as the Board of Education as a "District." *N.J.S.A.* 18A:7G–3. *N.J.S.A.* 18A:12–23 also recognizes such county vocational schools as a "local school district." Finally, *N.J.S.A.* 40:41A–30, which sets forth the general powers of counties throughout the State, specifically excepts "educational institutions authorized and established pursuant to Title 18A of the New Jersey Statutes" from the definition of a county agency.

There is also persuasive judicial authority that the Board of Education is not a county board. In *Bd. of Trustees Mercer County Community College v. Sypek*, 160 *N.J.Super.* 452, 390 *A.*2d 629 (App.Div.), *certif. denied*, 78 *N.J.* 327, 395 *A.*2d 196 (1978), we were called upon to consider the impact, if any, of the Optional County Charter Law (pursuant to which Hudson County has chosen to operate with a county executive) upon legislation dealing with county colleges and vocational schools. *Id.* at 454, 390 *A.*2d 629. Following the decision of Mercer County to adopt a similar form of governance, the Freeholders adopted an administrative code which placed control of Mercer County Community College and the Board of Education of the Vocational Schools of Mercer County under the domain of the Freeholders. *Ibid.* The

college and the vocational schools filed suit, each seeking a declaration that it was a "separate political subdivision ... independent of the County of Mercer." *Ibid.* The trial court concluded that both bodies were "agencies" of the county for purposes of the Optional County Charter Law and that the charter law superseded any inconsistent provisions within Title 18A. *Id.* at 455, 390 A.2d 629.

We disagreed and reversed the judgment of the trial court. We gave several reasons to support our conclusion. We first noted that cases decided prior to the adoption of the Optional County Charter Law had recognized the separate statutory identity of both county colleges and county vocational schools. *Id.* at 459, 390 A.2d 629. We noted that the charter law contained no indication that the Legislature disagreed with those earlier characterizations. *Id.* at 460, 390 A.2d 629.

Writing for the court, Judge Bischoff concluded in the following manner:

> A more basic reason for our determination that the Charter Law does not alter the relationship between the county colleges and vocational schools on the one hand and the county on the other results from a broad overview of Title 18A. This Title contains an extensive, integrated legislative scheme with established control and supervision of all education in the State.... This plan for education has been carefully formulated over the years and has a firm constitutional foundation. It embodies a policy of independence and freedom from political control for all forms of public education.
>
> In dealing with such a basic subject and the comprehensive, carefully formulated plan expressed in Title 18A, we should not lightly infer that the Legislature intended to alter or repeal any portion of it....
>
> Whether the county should be vested with authority to control, alter, diminish or abolish county colleges and vocational schools is an important policy question. In our judgment, a policy question of that significance lies in the legislative domain and should be resolved by the Legislature. A court should not find such power in the county unless the statute under consideration confers it expressly or by unavoidable implication. In this case the Charter Law does not expressly confer the authority to act with respect to the county colleges or the vocational schools and, in our judgment, the statutory language does not justify a judicial determination that power of such magnitude resides there by implication.
>
> [*Sypek, supra,* 160 *N.J.Super.* at 460–62, 390 A.2d 629 (citations omitted).]

The Legislature has remained silent since, indicating its agreement with Judge Bischoff's analysis.

Respondents refer to *Opinion No. 653 of the Advisory Committee on Professional Ethics,* 132 *N.J.* 124, 623 *A.*2d 241 (1993), to support their contention that appointments to the Board of Education by the County Executive require Freeholder advice and consent. We disagree.

In that matter, the Court was concerned solely with the question whether partners in a law firm could simultaneously serve as county counsel and as counsel to a county vocational school board. *Id.* at 126, 623 *A.*2d 241. It had no reason to consider the question presented in the present appeal, and the Court's fleeting reference within its opinion to the Freeholders giving advice and consent to appointments to such a board is only dictum. *Id.* at 127, 623 *A.*2d 241. That this is so is clearly indicated later in its opinion when the Court referred approvingly to our holding in *Sypek, supra,* that the county has no power to control, alter, diminish or abolish county vocational schools. *Id.* at 135, 623 *A.*2d 241.

For the reasons stated, we are satisfied that the trial court erred in its conclusion that the County Executive was required to obtain the advice and consent of the Freeholders to his appointments to the Board of Education and we reverse the order under review.