**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1673-16T4

S.L.W.,

    Petitioner-Appellant,

v.

NEW JERSEY DIVISION
OF PENSIONS AND BENEFITS,

    Respondent-Respondent.

_____

Argued May 14, 2018 — Decided July 17, 2018

Before Judges Sabatino, Rose and Firko.

On appeal from the Board of Trustees, Police
and Firemen's Retirement System, Department of
the Treasury, Docket No. 3-10-031416.

John F. Pilles, Jr., argued the cause for
appellant.

Jeff S. Ignatowitz, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa H.
Raksa, Assistant Attorney General, of counsel;
Jeff S. Ignatowitz, on the brief).

PER CURIAM

Claimant S.L.W.[1] appeals from a November 15, 2016 final decision of the Board of Trustees ("Board") of the Police and Firemen's Retirement System ("PFRS"), denying her application for survivor benefits from her deceased father's pension. The Board adopted the recommendations of the Administrative Law Judge ("ALJ"), who determined S.L.W. failed to satisfy the definition of a "child" pursuant to N.J.S.A. 43:16A-1(21), and that she failed to provide sufficient documentation supporting her claim. Although we disagree with the Board's initial basis for denying S.L.W.'s claim, we are satisfied, nonetheless, she failed to support her claim for dependency. Accordingly, we affirm.

I.

We glean the pertinent facts, which are largely undisputed, from the record before the ALJ. S.L.W. is the daughter of the late J.R.W., who retired from public service in 2005, and received pension retirement benefits under the PFRS. At the time of her father's retirement, S.L.W. was twenty-five years old and gainfully employed as a police officer with the Delaware River Port Authority ("DRPA"). She resided in her own home in Sicklerville.

---

[1] We use initials to protect the confidentiality of the records submitted by S.L.W.

When he retired, J.R.W. continued to reside with his second wife in Mount Ephraim, having divorced S.L.W.'s mother, C.L.M., in 1995. Pursuant to the judgment of divorce, C.L.M. claimed S.L.W. and her brother as dependents for income tax purposes.

In October 2008, S.L.W. was involved in a work-related motor vehicle accident, rendering her unable to maintain employment. S.L.W. received interim worker's compensation benefits until her settlement with the DRPA was finalized. Although she continued to live separately from her father in her own home, S.L.W. contends she "substantially depended" financially on J.R.W. after her accident.

At the time of his death in 2012, J.R.W. was a widower. Approximately eighteen months later, S.L.W. applied for PFRS survivor benefits, claiming she met the definition of "child" set forth in a PFRS handbook, and Fact Sheet #19 of a Division of Pensions and Benefits ("Division") publication. The Division denied her application, "interpret[ing] the definition of '[c]hild' as someone who at the time of emancipation could not be gainfully employed as a result of a physical or mental disability [she] incurred prior to [her] emancipation." (Emphasis added).

In denying S.L.W.'s claim, the Division noted that if its "interpretation of the definition of '[c]hild' proves to be incorrect, then [she] would still need to prove dependency under

A-1673-16T4

[N.J.A.C. 17:4-3.7]."   In particular, the Division advised that the regulation requires "the filing of an affidavit of dependency, supported by the deceased and the claimant's income tax returns, for the period immediately preceding the death [of J.R.W.]"

In an August 7, 2014 letter to S.L.W., the Board agreed with the Division.[2]   Despite its denial, the Board transferred the case to the Office of Administrative Law for fact-finding "[d]ue to numerous factual questions that remained unanswered."  (Alteration in original).  Among other things, the Board cited S.L.W.'s failure to submit "[m]edical proof that she is disabled and no longer capable of any type of gainful employment," documentary proof of "[h]er education, employment and marital status[,]" whether she is "currently collecting [w]orker's compensation, [s]ocial [s]ecurity or other [d]isabilty benefits or eligible to collect these benefits in the future," and "[p]roof of dependency with the submission [her father's] of Federal and State income tax returns for the years 2004-2012."   (First, second, eighth, and ninth alterations in original).

S.L.W. and the Board filed cross-motions for a summary decision, pertaining to two substantive issues framed by the ALJ

---

[2] Although the letter was provided to the ALJ, who referenced it in his decision, it was not provided to us by the parties to this appeal.

as: "whether [S.L.W.] is statutorily entitled to survivor benefits as a surviving 'child' and whether the Board may require a ('child') claimant to establish financial dependence, upon the retired parent, with income tax returns through N.J.A.C. 17:4-3.7." The ALJ considered the parties' submissions, including documentary evidence, and oral argument.

While the matter was pending before the ALJ, S.L.W. supplemented her submission with her tax returns for 2009 and 2012 through 2014. S.L.W. claimed she was not required to file tax returns in 2010 or 2011 because she earned de minimis income. On her tax returns for 2009 (the year following her accident) and 2012 (the year J.R.W. died), the box "Yourself" under "Exemptions" is checked, indicating S.L.W. claimed herself as an exemption. Next to the term, "Yourself" is the statement, "If someone can claim you as a dependent, do not check [the] box."

Although S.L.W. did not produce her father's tax returns,[3] she submitted correspondence from L.A.G., a tax professional, and D.L.P., an accountant, opining that J.R.W. had provided "significant financial support" for S.L.W.

---

[3] According to S.L.W.'s affidavit in support of summary judgment, a Division representative indicated J.R.W. did not claim her as a dependent on his Federal or State income tax returns.

According to L.A.G., J.R.W. could have claimed S.L.W. as a dependent on his Federal income tax returns for 2010[4] and 2011. L.A.G. opined J.R.W. did not claim S.L.W. on his self-prepared returns because he "was simply complying with the divorce decree" and "would not have possessed the detailed knowledge necessary to determine whether he was entitled to the exemption for his daughter in her adult years."

D.L.P. reviewed J.R.W.'s bank statements and S.L.W.'s finances from September 2009 through January 2011. D.L.P. could not "find a direct correlation between checks written directly to [S.L.W.] from [her] father and deposits [made] into [her] bank account." However, D.L.P. identified "substantial checks" from J.R.W.'s account to S.L.W.'s account, and "substantial ATM withdrawals[,]" which S.L.W. indicated were for her benefit. Based on her analysis, D.L.P. concluded "financial support from an outside source was clearly evident."

In his October 7, 2016 written initial decision, the ALJ determined S.L.W. failed to meet the definition of a "child" pursuant to N.J.S.A. 43:16A-1(21)(d), which provides in pertinent part:

> "Child" shall mean a deceased member's . . .
> unmarried child . . . (d) of any age who, at

---

[4] The ALJ's decision states "2009" instead of "2010," as set forth in L.A.G.'s letter.

the time of the member's . . . death, is disabled because of an intellectual disability or physical incapacity, is unable to do any substantial, gainful work because of the impairment and his impairment has lasted or can be expected to last for a continuous period of not less than [twelve] months, as affirmed by the medical board.

Although the ALJ found "a literal reading of the definition of 'child' under N.J.S.A. 43:16A-1(21)(d) seemingly supports S.L.W.'s argument that she is eligible for survivor benefits, such an interpretation appears to run afoul of legislative objectives and public policy." The ALJ cited two Supreme Court decisions referencing those objectives and policy. Initially, he quoted Saccone v. Board of Trustees, Police and Firemen's Retirement System, 219 N.J. 369, 381 (2014), where the Court determined "the motivating force behind the Legislature's enactment of [the PFRS survivors' benefits statute][5] appears to have been the financial well-being of a member's surviving spouse and children." Further,

---

[5] N.J.S.A. 43:16A-12.1(a). Pertinent to this appeal, where J.R.W. was not survived by a wife, that statute provides:

> Upon the death after retirement of any member of the retirement system . . . [twenty percent] of final compensation will be payable to one surviving child, [thirty-five percent] of such compensation to two surviving children in equal shares and if there be three or more children, [fifty percent] of such compensation would be payable to such children in equal shares.

the ALJ cited <u>Eyers v. State of New Jersey, Board of Trustees Public Employees' Retirement System</u>, 91 N.J. 51, 57 (1982), where the Court pronounced that the PFRS survivors' benefits statute "evinces a strong legislative policy in favor of those most likely to be dependent upon a public employee." Relying on those decisions, the ALJ determined "a disabled adult child, in order to satisfy N.J.S.A. 43:16A-1(21)(d), must have been dependent upon the deceased member."

Further, the ALJ found persuasive that a related section of the Social Security Act, 42 U.S.C.A. § 402(d), and our State's child support case law interpreting child-support orders, N.J.S.A. 2A:34-23, both require the disability arise before emancipation. To support his conclusion, the ALJ quoted our decision in <u>Kruvant v. Kruvant</u>, 100 N.J. Super. 107, 120 (App. Div. 1968), where we observed "[W]e d[id] not believe that the Legislature in enacting N.J.S.[A.] 2A:34-23 intended to confer jurisdiction upon the court to compel a husband or wife to support a child suffering from a disability which did not exist at the time of his attaining his majority but came about some time later."

Secondly, the ALJ determined S.L.W. failed to produce the requisite tax returns pursuant to N.J.A.C. 17:4-3.7(a). Under that regulation, "Proof of dependency shall be established by the filing of an affidavit of dependency, supported by the deceased

and the claimant's income tax returns, for the period immediately preceding the death or accident." In particular, S.L.W. failed to provide her father's tax returns from 2004 through 2012. Further, S.L.W.'s tax returns for 2009 and 2012 did not support dependency because those returns indicated no one could claim her as a dependent.

In disqualifying S.L.W. for failing to provide supporting documentation, the ALJ rejected her contentions that the Board should be estopped from requiring tax returns pursuant to N.J.A.C. 17:4-3.7, and should address the underlying issue that precluded her father from claiming her as a dependent, i.e., that her parents' divorce decree prevented J.R.W. from doing so. Instead, the ALJ determined S.L.W. failed to demonstrate that N.J.A.C. 17:4-3.7 is arbitrary, capricious or unreasonable, where, as here, the regulation "has a presumption of reasonableness." The ALJ further found S.L.W. did not demonstrate she "detrimentally relied upon the Board's rules and regulations so as to justify equitable estoppel of the application of N.J.A.C. 17:4-3.7 and its requirement of tax returns to support a claim of dependency."

Thereafter, the Board adopted the ALJ's recommendations. This appeal followed.

On appeal, S.L.W. raises the following arguments for our consideration: she meets the statutory requirements for survivor

benefits, including the definition of a "child"; the Division is equitably estopped from denying benefits to an emancipated applicant because the condition is not explicitly required by statute; the Division is equitably estopped from requiring that she establish her father claimed her as a dependent on his tax returns; N.J.A.C. 17:4-3.7 is unenforceable because it is not authorized by the enabling statute; and the requirement that she submit tax returns as proof of dependency is unconstitutional as a violation of the due process clause of the Fourteenth Amendment.

## II.

### A.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). In challenging an agency conclusion, the claimant carries a substantial burden of persuasion, and the determination of the administrative agency carries a presumption of correctness. Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390-91 (1983); McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

"Judicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012)

(citation omitted). We overturn an agency determination only if it is arbitrary, capricious, unreasonable, unsupported by substantial credible evidence as a whole, or inconsistent with the enabling statute or legislative policy. Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997); see also Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013) (citing Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223-24 (2009)). "As a result, the party challenging a regulation has the burden of proving that the agency's action was 'arbitrary, capricious or unreasonable.'" Schundler, 211 N.J. at 548 (citation omitted).

However, "we are not bound by an agency's statutory interpretation or other legal determinations." Mattia v. Bd. of Trs., Police & Firemen's Ret. Sys., ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 6) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). Further, "we owe no deference to an administrative agency's interpretation of judicial precedent." Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 7).

We have carefully considered S.L.W.'s arguments in light of the applicable law, and initially conclude she failed to establish

dependency. We affirm the ALJ's decision, in that specific regard, substantially for the sound reasons stated in his written opinion of October 7, 2016. We add only the following comments.

S.L.W.'s assertion that her parents' divorce decree prevented J.R.W. from including her as a dependent on his tax returns is speculative and lacks corroboration, notwithstanding L.A.G.'s opinion to the contrary. We agree with the Board that the record is devoid of any evidence "indicat[ing] why either [J.R.W.] or [C.L.M.] would have claimed [S.L.W.] as a dependent in 2012 (when she was [thirty-three] years old) as a result of the 1995 divorce decree."

Nor are we persuaded by S.L.W.'s argument that N.J.A.C. 17:4-3.7(a) is unenforceable because it is not valid under the enabling statute. Pursuant to that statute, "The State Treasurer shall, with the advice of the State Investment Council, the Director of the Division of Pensions . . . and in accordance with the 'Administrative Procedure Act' [("APA")], . . . promulgate any rules and regulations necessary to accomplish the purposes of this act." N.J.S.A. 43:16A-16.16. Again, "The motivating force behind the Legislature's enactment of [the survivors' benefits section] appears to have been the financial well-being of a member's surviving spouse and children." Saccone, 219 N.J. at 381. Generally, the Board owes a fiduciary duty to its members, and

that duty would be thwarted if it provided benefits to someone who is not eligible. See Mount v. Trs. of Pub. Emps' Ret. Sys., 133 N.J. Super. 72, 86 (App. Div. 1975).

Accordingly, the enabling statute clearly permits the Division to promulgate regulations necessary to accomplish the purpose of the PFRS statute, including the survivor benefits subsection. The Division's decision to promulgate N.J.A.C. 17:4-3.7(a) was a reasonable and prudent act in its role as fiduciary of the pension plan, addressing the statute's objective of providing for those "most likely to be dependent upon a public employee." Eyers, 91 N.J. at 57.

We agree with the ALJ that S.L.W. has not demonstrated that the statutory requirement of submitting income tax returns was arbitrary, capricious or unreasonable. In particular, her contention that J.R.W. did not claim her as a dependent on his tax returns after her car accident, when she was in her late-twenties, because of his divorce decree entered in 1995, when she was in her teens, is uncorroborated and specious. Therefore, based on the enabling act, and the legislative policy underscoring the survivor benefits statute, S.L.W.'s claim for survivor benefits fails because she did not comply with the mandates of N.J.A.C. 17:4-3.7(a).

Because we find S.L.W. failed to provide the requisite income tax returns supporting her claim of dependency, we need not address her argument that the agency erred in finding she did not meet the definition of a "child" under N.J.S.A. 43:16A-1(21)(d). We do so for the sake of completeness.

It is well-settled that "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). Thus, when interpreting a statute, the first step is to look to the plain meaning of the language. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202 (1999). In doing so, a court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492 (internal citations omitted).

Further, a court should take care not to "disregard plain statutory language to replace it with an unenacted legislative intent." Bd. of Chosen Freeholders of Cty. of Hudson v. Cty. Exec. of Cty. of Hudson, 357 N.J. Super. 242, 249 (App. Div. 2003) (citation omitted). In other words, a court should not "'write in an additional qualification which the Legislature pointedly

omitted in drafting its own enactment,' Craster v. Board of Commissioners of Newark, 9 N.J. 225, 230 (1952), or 'engage in conjecture or surmise which will circumvent the plain meaning of the act,' In re Closing of Jamesburg High School, 83 N.J. 540, 548 (1980)." DiProspero, 183 N.J. at 492. Therefore, "a statute that is clear and unambiguous on its face, . . . is not open to construction or interpretation." Bd. of Chosen Freeholders, 357 N.J. Super. at 249 (citation omitted).

Here, S.L.W. claims that the emancipation requirement is not explicitly stated in the statute, regulation or educational publications issued by the Division and, as such, N.J.S.A. 43:16A-1(21)(d) cannot be interpreted to limit survivor benefits to unemancipated children. In doing so, she contends the Division engaged in improper rulemaking, and essentially adopted an invalid policy ultra vires.

We have recognized that "The inquiry whether an agency's actions constitute improper rulemaking is informed by well-settled principles." In re N.J.A.C. 7:1B-1.1, 431 N.J. Super. 100, 133 (App. Div. 2013). The APA defines an administrative rule as "each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." N.J.S.A. 52:14B-2. "If an agency determination or action

15

constitutes an 'administrative rule,' then its validity requires compliance with the specific procedures of the APA that control the promulgation of rules." Airwork Serv. Div. v. Dir., Div. of Taxation, 97 N.J. 290, 300 (App. Div. 1984) (citation omitted). "The purpose of the APA rulemaking procedures is 'to give those affected by the proposed rule an opportunity to participate in the process, both to ensure fairness and also to inform regulators of consequences which they may not have anticipated.'" In re Provision of Basic Generation Serv. for Period Beginning June 1[,] 2008, 205 N.J. 339, 349 (2011) (citation omitted).

In the seminal case, Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313 (1984), our Supreme Court outlined six factors to consider when evaluating whether an agency determination, "to be valid, had to comply with the requirements governing the promulgation of administrative rules as provided by the APA." Id. at 328. In doing so, the Court highlighted the policy reasons behind formal rulemaking requirements, including public notice, public comment, fairness, and predictability. Id. at 331. According to the Court:

> [A]n agency determination must be considered
> an administrative rule when all or most of the
> relevant features of administrative rules are
> present and preponderate in favor of the rule-
> making process. Such a conclusion would be
> warranted if it appears that the agency
> determination, in many or most of the

following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

[Id. at 331-32.]

Those criteria "need not be given the same weight, and some factors will clearly be more relevant in a given situation than others." Doe v. Poritz, 142 N.J. 1, 97 (1995).

Here, factors (2), (4), (5)(i) and (6) compel our determination that the Division's attempts to augment the plain language of N.J.S.A. 43:16A-1(21)(d) with an emancipation requirement "constituted a rule, and that its adoption required rule-making procedures." Metromedia, 97 N.J. at 334. Pursuant to those factors, the emancipation requirement is generally and

17

uniformly applied to all child claimants (factor 2); the requirement was "not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization" (factor 4); it "was not previously expressed in any official and explicit agency determination, adjudication or rule" (factor 5(i)); and the emancipation requirement reflects the Division's policy in its interpretation of PFRS law (factor 6).  Indeed, the Division's publications that assist retirees in understanding their benefits are silent as to emancipation in the definition of a "child."  Thus, the requirement was not predictable or fair, thereby requiring formal rulemaking procedures and public notice. Metromedia, 97 N.J. at 331.

In sum, because the rulemaking procedures did not occur here, the Board incorrectly upheld the ALJ's determination that S.L.W.'s emancipation excluded her from the definition of a child pursuant to N.J.S.A. 43:16A-1(21)(d).  Nevertheless, as we explained in Part II, supra, S.L.W. failed to submit the requisite income tax returns to support her claim of dependency.  Her remaining arguments, to the extent we have not addressed them, are without sufficient merit to warrant further discussion.  R. 2:11-3(e)(1)(D) & (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1673-16T4