**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0116-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NICHOLAS F. WELCH,

     Defendant-Appellant.

_____

Submitted December 16, 2019 – Decided March 11, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-09-1648.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Nicholas F. Welch was convicted by jury of first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) (count one); first-degree murder – purposely/knowingly, N.J.S.A. 2C:11-3(a)(1) and (2) (count two); four counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (counts three, four, five and six); first-degree murder – commission of crime, N.J.S.A. 2C:11-3(a)(3) (count seven); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count eight); second-degree possession of weapon for unlawful purpose, N.J.S.A. 2C:39-4(a) (count nine); and second-degree burglary, N.J.S.A. 2C:18-2(b)(1) (count ten), in connection with a shooting at a fraternity party.[1] We affirmed his convictions and sentence, State v. Welch, No. A-5950-13 (App. Div. Nov. 14, 2016); the Supreme Court denied his petition for certification, 230 N.J. 467 (2017).

He now appeals from the court's order denying his petition for post-conviction relief (PCR) without an evidentiary hearing, arguing:

> POINT I
>
> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE

---

[1] Defendant was found not guilty of third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (count eleven).

A-0116-18T3

DEFENDANT ESTABLISHED A <u>PRIMA FACIE</u> CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO HAVE AN EXCULPATORY WITNESS TESTIFY; FOR FAILING TO PURSUE A MOTION TO HAVE THE ASSISTANT PROSECUTOR BE DISQUALIFIED AND TESTIFY; AND BY EFFECTIVELY INDUCING DEFENDANT NOT TO TESTIFY.

> A. TRIAL COUNSEL FAILED TO HAVE ISAIAH KELLY, AN EXCULPATORY WITNESS, TESTIFY.

> B. TRIAL COUNSEL FAILED TO PURSUE A MOTION TO HAVE THE ASSISTANT PROSECUTOR BE DISQUALIFIED AND TESTIFY AS A DEFENSE WITNESS.

> C. TRIAL COUNSEL, BY NOT PREPARING DEFENDANT, EFFECTIVELY INDUCED HIM NOT TO TESTIFY.

In his pro se supplemental brief, defendant raises the following additional points:

> POINT I

> THE TRIAL COURT ERRED IN DENYING [PCR] TO [DEFENDANT] TO HIS ARGUMENT IN POINT II OF HIS PRO SE BRIEF IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FUNDAMENTAL FAIRNESS.[2]

---

[2] Defendant improperly references arguments made in the pro se brief he submitted to the PCR court. <u>Rule</u> 2:6-1(a)(2) precludes inclusion of that brief

3

POINT II

[DEFENDANT] SUBMIT[S] THAT THE TRIAL COURT ERRED IN NOT GRANTING HIM AN EVIDENTIARY HEARING ON THE PLEA DEAL AS RAISED IN POINT III OF HIS PRO SE BRIEF CONCERNING COUNSEL AND THE PLEA BARGAIN.

POINT III

[DEFENDANT] SUBMIT[S] THAT THE TRIAL COURT ERRED IN DENYING HIS [PCR] IN POINT IV CONCERNING INEFFECTIVE ASSISTANCE OF COUNSEL WHO FAILED TO PROVIDE OUT OF STATE WITNESS WHO HAD PRIOR CONVERSATIONS AND INFORMATION CONCERNING WHO PULLED THE TRIGGER IN THIS CASE AND INFORMATION THAT ONLY SOMEONE WHO WAS NOT ONLY PRESENT KNEW BUT ADMITTEDLY STATED TO ISAIAH KELLY HE SHOT INTO THE CROW[D] MAD BECAUSE [DEFENDANT] DID NOTHING IN WHICH COUNSEL STATED HE DID NOT THINK THE COURT WOULD APPROVE.

POINT IV

[DEFENDANT] SUBMIT[S] THAT THE PCR COURT ERRED IN DENYING RELIEF AS TO POINT IV OF HIS PRO SE POST CONVICTION LETTER BRIEF CONCERNING HIS FOURTH AMENDMENT CLAIMS.

---

in this record. Any argument must be fully set forth in the appellate briefs, whether submitted by counsel or defendant, or that argument is waived. Whitfield v. Blackwood, 101 N.J. 500, 504 (1986) (Clifford, J., concurring).

A-0116-18T3

POINT V

[DEFENDANT] SUBMIT[S] THAT THE [PCR] COURT ERRED IN DENYING RELIEF ON POINT VI OF [DEFENDANT'S] ARGUMENT CONCERNING ADDITIONAL INFORMATION OMITTED WHICH COULD HAVE LE[D] TO THE [SUPPRESSION MOTION JUDGE] THROWING OUT ALL THE EVIDENCE WHICH WAS MATERIAL TO THE DEFENSE.

POINT VI

THE [PCR] COURT ERRED IN DENYING [PCR] FOR ISSUES RAISED IN POINT VII OF HIS BRIEF CONCERNING APPELLATE COUNSEL.

POINT VII

[DEFENDANT] SUBMIT[S] THAT THE [PCR] COURT ERRED BY NOT GRANTING A[N] EVIDENTIARY HEARING ON THE MERITS OF POINT VIII OF HIS PRO SE BRIEF.

POINT VIII

THE [PCR] COURT ERRED IN BY NOT GRANTING RELIEF TO POINT . . . IX OF [DEFENDANT'S] PRO SE [PCR] BRIEF.

POINT IX

[DEFENDANT] WILL ARGUE THAT THE TRIAL COURT NOR [PCR] COURT MADE A RULING ON THE MIRANDA HEARING THUS VIOLATING [DEFENDANT'S] DUE PROCESS RIGHT TO APPEAL ON THIS ISSUE.

5                                        A-0116-18T3

POINT [X][3]

[DEFENDANT] SUBMIT[S] THAT THE [PCR] COURT ERRED IN DENYING RELIEF FOR AN EVIDENTIARY HEARING WHERE MS. DENISE VALDEZ WAS NOT CALLED AS A DEFENSE WITNESS.

POINT [XI]

[DEFENDANT] WILL ARGUE THAT [PCR] COUNSEL WAS INEFFECTIVE IN DENYING AN EVIDENTIARY HEARING THE STATE HAD ALREADY CONCEDED WHICH WOULD HAVE ALLOWED THE EVIDENCE TO BE PLACED ON RECORD WITHOUT OPPOSITION BECAUSE HE WAS NOT PREPARED.

Because the PCR court did not hold an evidentiary hearing, we review both the factual inferences drawn by the PCR court from the record and the court's legal conclusions de novo. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by

---

[3] The sequence of defendant's point headings omitted "Point X" and labeled his last two arguments as "Point XI" and "Point XII." We correct those errors here for clarity.

the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. Under those standards, we determine an evidentiary hearing is required to address defendant's claim that trial counsel was ineffective for failing to call Isaiah Kelly as a witness. We are unpersuaded by any other of defendant's arguments.

## I.

Central to defendant's argument that his trial counsel was ineffective for failing to call Kelly to testify at trial is a sworn statement taken four days after the homicide from Kelly at the Wilkes-Barre Pennsylvania Police Department by Detectives Holt Walker of the Essex County Prosecutor's Office and Detective Javier Acevedo of the East Orange Police Department. Kelly told the detectives that codefendant Marcus Bascus, who was charged in the first ten counts of the indictment for the same crimes as defendant,[4] told him that Bascus

> went to the party because [defendant] had got jumped, and they went back to the party, and he handed [defendant] the gun. [Defendant] fired a shot, in the air, I believe, or -- you know, and [Bascus] grabbed the gun

---

[4] Bascus did not stand trial with defendant.

A-0116-18T3

from him and then started just spraying the . . . like, shooting it inside the house at people.

When asked if Bascus told him how he and defendant "met up," Kelly answered:

> Apparently, they were supposed to go to the party together but [defendant] went to the house first. And what happened was he went in there trying to -- I guess trying to, like, to Bogart (phonetic) the party, and he kind of got beat up when he went inside, and then he came out stumbling, and [Bascus] had seen him, and he grabbed a gun that he -- I don't know where he grabbed it from, but he just grabbed a gun and handed it to [defendant].

Responding to Walker's questions about the incident, Kelly reiterated that defendant "let off a shot, I guess to scare everybody," whereupon Bascus "kind of got mad and was like, ['f]uck that,['] and then grabbed the gun" from defendant and "started shooting[.]"

Although the PCR court—before which the case was tried—recognized "Kelly had vital information in this case [that] would refute the State's evidence against [defendant] by showing that . . . Bascus, originally the co-defendant in this case, not [defendant], began randomly shooting in the crowd," the court noted Kelly was not present at the scene and "[t]he information . . . came from . . . Bascus, in Wilkes-Barre, Pennsylvania[,] not based upon any personal information which probably would have been [sic] admitted anyway because of inadmissible hearsay." The PCR court continued:

Nevertheless, even -- even if admissible, there would not necessarily been helpful to [defendant]. [Kelly] does . . . testify that [defendant] fired the first shot and Bascus . . . fired certain subsequent shots would qualify with the term such as I guess or I believe. And, in fact, the statement would have placed [defendant] at the scene of the crime with the murder weapon in his hand. This would not necessarily have been helpful with regard to exonerating or creating reasonable doubt that with regard to . . . defendant's involvement in this particular incident.

The State argues the failure to call Kelly was sound trial strategy, not ineffective assistance of counsel. We agree with the State that our Supreme Court's holding in State v. Arthur, 184 N.J. 307 (2005), should instruct our analysis. The Court recognized in making "one of the most difficult strategic decisions that any trial attorney must confront," deciding which witnesses to call at trial,

> [a] trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
>
> [Id. at 320-21.]

9                                                   A-0116-18T3

The trial attorney's "decision concerning which witnesses to call to the stand is an 'an art,' and a court's review of such a decision should be 'highly deferential.'" Id. at 321 (quoting Strickland, 466 U.S. 689, 693).

We first note, the PCR court did not couch its decision in terms of defense counsel's strategy. Moreover, absent an evidentiary hearing, the record is barren as to what that strategy was.

Contrary to the PCR court's determination that Bascus's statement to Kelly was probably inadmissible hearsay, the statement of a codefendant, admitting that defendant did nothing more than shoot in that air, and he, not defendant, actually shot at people, was likely admissible. Bascus's alleged admission that he shot into the crowd of partygoers in the house was so far against his interests regarding the charges on which he was indicted "that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true." N.J.R.E. 803(c)(25). "Statements by a declarant that exculpate another, 'inferentially indicate[] his own involvement,' and are considered sufficiently against the declarant's penal interests to be admissible." State v. Norman, 151 N.J. 5, 31 (1997) (quoting State v. Davis, 50 N.J. 16, 28-29 (1967)); see also State v. White, 158 N.J. 230, 244 (1999) (holding statements exculpating a defendant are admissible "under the statement-against-interest

exception to the hearsay rule if, when considered in the light of surrounding circumstances, they subject the declarant to criminal liability or if, as a related part of a self-inculpatory statement, they strengthen or bolster the incriminatory effect of the declarant's exposure to criminal liability").

Kelly's statement, with or without defendant's certification that his trial counsel told him Kelly could not testify because counsel did not think he could secure payment for Kelly's transportation from Pennsylvania where he was incarcerated, presented a prima facie case of ineffective assistance of counsel warranting an evidentiary hearing. R. 3:22-10(b); State v. Preciose, 129 N.J. 451, 462 (1992). The statement taken from Kelly alleges specific facts and evidence supporting defendant's allegations. See State v. Porter, 216 N.J. 343, 355 (2013). The statement not only shows that defendant did not shoot into the crowd, but also evidences that defendant—who is said to have shot in the air—may not have shared Bascus's intent to so do.

Without a hearing, at which the PCR court can determine: if counsel actually stated that transportation issues precluded Kelly's production at trial; any other reason he did not call Kelly; and any reason trial counsel decided against calling Kelly and pursued the misidentification defense ultimately utilized and contended Bascus or Isaac Muldrow—on whom the murder weapon

11

was found—was the shooter, the PCR court could not reasonably defer to trial counsel's decision not to call Kelly. The reason why Kelly was not called is absent from the record, as is the reason trial counsel chose the defense tack presented to the jury.

We do not decide whether the trial strategy chosen by trial counsel was sound or ineffective. We leave that decision to the PCR judge. We recognize many factors may have entered trial counsel's decision: defendant's statement to the police;[5] the nature of the identifications made by the State's witnesses; the testimony of Muldrow who contended defendant gave him the gun and told him to get rid of it; or anything else known to counsel. We trust the PCR court will review defense counsel's actions, according the presumption that counsel's conduct fell within the range of reasonable professional assistance, Arthur, 184 N.J. at 318-19, and adhering to the tenet that "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial," State v. Castagna, 187 N.J. 293,

---

[5] The State argues defendant's statement, in which he first denied being at the party then admitted he was there but denied entering the house, buttressed trial counsel's decision to pursue the misidentification defense because Kelly would have placed him at the scene with a gun in his hand.

A-0116-18T3

314 (2006). The PCR court will, of course, adhere to the familiar standards synopsized by the Court in Arthur:

> In determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" [Norman, 151 N.J. at 37]. Because of the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.
>
> In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
>
> [184 N.J. at 318-19 (first, second and fourth alterations in original).]

We limit the hearing required by our remand to the single issue of counsel's strategy not to call Kelly and, instead pursue another defense, because we find no merit in defendant's other arguments.

A-0116-18T3

II.

Defendant argues his trial counsel was ineffective for failing to pursue a motion to disqualify Essex County Assistant Prosecutor Romesh Sukhdeo and call him as a defense witness, after the motion judge—who retired prior to trial—denied the disqualification motion without prejudice, ruling the motion was premature because Sukhdeo had not yet been subpoenaed by defendant, leaving the decision to the trial court "[i]f and when" a subpoena issued. Sukhdeo was never subpoenaed, and trial counsel did not renew the motion; Sukhdeo tried the case and did not testify.[6]

Defendant argued to the motion judge that Sukhdeo, as the lead prosecutor in this case, worked hand-in-hand with Walker, the detective involved in the application for and return of a search warrant for defendant's residence, in which misrepresentations were made to the judge who issued the warrant (warrant judge). The motion judge found "two unassailable facts": "information provided to [the warrant judge] was inaccurate" and "the return of the [a]ffidavit

---

[6] The PCR court found that an application to disqualify Sukhdeo was made to it, and that the motion was denied. We determined, however, on direct appeal that there was no evidence in the record the assistant prosecutor was served with a subpoena or that the disqualification motion was renewed. Welch, slip op. at 11. Both the State and defense concur the record is still devoid of evidence that the motion was renewed.

14

that was given to [the warrant judge] was also equally false." The search warrant application falsely stated defendant was a member of the Bloods street gang, prompting the warrant judge's issuance of a protective order with the search warrant. The return falsely represented that all items were seized from the first floor and did not disclose that items were also seized from the basement; the items seized from the basement were suppressed by the motion judge in deciding defendant's motion to suppress evidence. We also note the return for the warrant to search Bascus's residence did not disclose shotgun shells found therein.

Defendant points to the motion judge's finding that Sukhdeo prepared the affidavit from facts supplied by Walker and that the two "acted in concert," arguing they both gave misleading information and violated his constitutional right to due process. He contends an evidentiary hearing is required to "allow . . . Sukhdeo to testify as to why he would sign a document which he knew to be false."

A defendant contending that counsel was ineffective for failure to file a motion must show a reasonable probability "that the motion would have been successful." See State v. Roper, 362 N.J. Super. 248, 255 (App. Div. 2003) (holding "[i]n an ineffective assistance claim based on failure to file a suppression motion, the prejudice prong requires a showing that the motion

would have been successful").  Defendant has not established sufficient grounds for granting the motion or for an evidentiary hearing.

As we recognized on direct appeal:

> The mere likelihood that a prosecutor will be called to testify, "does not itself disqualify the prosecutor's office from representing the State."  State v. Harvey, 176 N.J. 522, 531 (2003).  "The law does not liberally permit a defendant to call a prosecutor as a witness.  On the contrary, a defendant must demonstrate a compelling and legitimate need to do so."  [State v. Alfano, 305 N.J. Super. 178, 189 (App. Div. 1997)].
>
> [Welch, slip op. at 11.]

Akin to his arguments before the motion judge that he wanted to call Sukhdeo regarding "issues concerning conspiring to fabricate evidence, deception and lies to [the warrant judge] on a number of occasions and which . . . resulted in a violation of [defendant's] constitutional rights to due process and fair trial," defendant now contends that Sukhdeo would have testified regarding "the alleged fabrication . . . which went to the very core of the State's integrity in prosecuting defendant."  But, as Sukhdeo urged to the motion judge, and as the PCR court found, defendant never specified what testimony would be elicited from the assistant prosecutor, proffering "specific facts and evidence supporting his allegations."  Porter, 216 N.J. at 355.

The record reveals that any testimony about fabrication in the search warrant application or return could have been obtained from Walker. Defendant has not shown a compelling and legitimate need to call Sukhdeo; thus, he has not demonstrated that his motion to disqualify the assistant prosecutor would have been successful, particularly in light of his failure to specify what Sukhdeo would have offered. Even the motion judge, who criticized the assistant prosecutor for failing to ensure that accurate information was presented to the warrant judge, did not conclude that Sukhdeo made intentional misrepresentations, asking: "How you could be a part of that, whether it was unintentionally or intentionally, you have an obligation to make sure that the information that is submitted . . . is accurate."

Further, in light of Walker's testimony and defendant's failure to proffer what could have been elicited from Sukhdeo, defendant has not explained how his testimony would have impacted the outcome of the trial, satisfying the second Strickland/Fritz prong.

And, defendant has failed to establish a prima facie case warranting an evidentiary hearing. "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.

1999). Defendant failed to meet that threshold. See Preciose, 129 N.J. at 462-63; R. 3:22-10(b). Furthermore, an evidentiary hearing cannot be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997). As such, an evidentiary hearing was properly denied.

Defendant's further arguments regarding this issue do not warrant discussion. R. 2:11-3(e)(2).

III.

Defendant also argues that his trial counsel was ineffective for "effectively inducing [him] not to testify" at trial. Defendant maintains that had trial counsel adequately discussed defendant's potential trial testimony, he would have chosen to testify. We agree with the PCR court that defendant's contention is belied by the record.

Consonant with the "better practice" that a court inquire whether counsel has advised a defendant of the right to testify, State v. Savage, 120 N.J. 594, 631 (1990), the trial court engaged in a fully colloquy with defendant about his right to testify, his right not to testify and the court's instruction to the jury regarding an election not to testify. That colloquy continued:

> THE COURT: You had an opportunity to talk to
> your lawyer about this particular issue?

18

[DEFENDANT]:  Yes.

THE COURT:  He's answered all your questions?

[DEFENDANT]:  Yes.

THE COURT:  You've had a thorough discussion with him about that?

[DEFENDANT]:  Yes.

THE COURT:  Do you have any questions now about that?

[DEFENDANT]:  No.

THE COURT:  I don't know; anything else you want to add, [defense counsel]?

[DEFENSE COUNSEL]:  The only thing I want to supplement is I just want to make it clear on the record, and I'll confirm it with my client, that we have had many discussions over the last couple years about what might happen in terms of whether he wants to testify or not.  And after we both had ample opportunity to discuss the issue, that especially most recently, my client has decided that he is not going to testify.  But he made that decision based upon discussions between the two of us.  I gave him advice. I gave him my opinions on things.

Ultimately, though, it wasn't my decision; it was my client's decision.  And I want to make sure that my client agrees that, number [one], that I explained everything to you, what the plus and minuses were of testifying versus not testifying.  Correct?

[DEFENDANT]:  Yes.

19

[DEFENSE COUNSEL]: And that the decision you've arrived at is based on a combination of my advice and, ultimately, your decision. Correct?

[DEFENDANT]: Yes.

"Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299. Defendant failed to establish a prima facie case of ineffective assistance of counsel; an evidentiary hearing was not warranted. See Marshall, 148 N.J. at 158.

IV.

We, again, note many of the arguments in defendant's pro se merits brief simply reference arguments made in the pro se brief submitted to the PCR court without setting forth what the full argument was. Not only is an issue not briefed deemed waived, Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011), an issue raised "[i]n a single sentence in its brief" is also deemed waived, N.J. Dep't of Envtl. Prot. v. Alloway Township, 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015). In any event, we determine the arguments set forth in defendant's pro se brief in Points II, IV, V, VI, VII, VIII, IX, and as renumbered, X and XI, are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). We add only the following comments.

Defendant's contention the PCR court erred by not granting an evidentiary hearing concerning counsel and an alleged plea bargain is unsupported. Other than defendant's bald assertion, there is, as the PCR court noted, no evidence that a plea offer was made. In fact, the State has denied that an offer was tendered. An evidentiary hearing was not warranted. Cummings, 321 N.J. Super. at 170.

We previously addressed defendant's claims about his motion to suppress his statement (Points VII and IX), and his motion to dismiss the indictment based on misconduct before the grand jury (Point VIII), on direct appeal. "[A] defendant may not use a petition for post-conviction relief as an opportunity to relitigate a claim already decided on the merits." State v. McQuaid, 147 N.J. 464, 483 (1997); see R. 3:22-5.

As to the failure to call Denise Valdez as a defense witness (Point X) to testify about the State's "wrong door claim and coorborate[] the fact that the exterior door was indeed the door that was kicked in by the shooter contrary to the prosecutor's belief," we note trial counsel presented an expert who testified the shoeprint found on the exterior door did not match defendant. Furthermore, trial counsel in summation thoroughly reviewed that evidence and the conflicting evidence about which door was kicked without Valdez's testimony.

Again, defendant has not presented an affidavit or certification from that witness to establish a prima facie case warranting an evidentiary hearing. State v. Jones, 219 N.J. 298, 312 (2014).

Lastly, defendant's contention that his PCR counsel was unprepared and failed to participate in an evidentiary hearing contorts his counsel's actual comment during the initial PCR hearing, responding to Sukhdeo's argument, recognizing that defendant's trial counsel was present:

> So . . . we have the witness here. We have the witness here. I -- I rather not a hearing. But just when you look at what the Appellate Division does with these cases are, you do the hearing, but you don't do the hearing and then four -- four years later you have to find witnesses that aren't here.
>
> I'm just cutting to the chase. So we have a situation where he says he wants a hearing, I say okay, and then when we get to court he goes stop. So I think we can take some testimony if we want today. I mean, look -- you look at the crux of this paperwork, he says his lawyer was ineffective. He said his lawyer was ineffective and that's what you -- you claim in -- in a PCR, ineffective assistance of counsel.
>
> There's [twenty] points total in this PCR. So . . . they're basically arguing everything that was argued in the pretrial motions that was litigated on the record, you know, planting of evidence, suppression, fourth Amendment, you know, the Miranda, why wasn't things done at the Grand Jury. All of that stuff was matters of the record.

22

> You know, as far as I'm concerned, they're procedurally barred. But he's claiming, look, my attorney told me apparently off the record I couldn't testify, he didn't prepare me. He did a horrible job, all of that stuff that he claims . . . in [defendant's] certification, those are the type of things that you explore in the evidentiary hearing. And that's why I have counsel here. They want a hearing, I'm ready to go.

PCR counsel clarified that he "did not say that we don't want a hearing" but said "we're not prepared to go forward with the hearing today because [the PCR court] had not granted one" and the scope of the hearing was not defined. PCR counsel correctly observed that without the court's decision whether an evidentiary hearing would be granted and, if so, what the scope would be, counsel was unable to determine what witnesses would be needed, and would need to prepare defendant's case in light of the parameters set by the PCR court. PCR counsel further argued "[t]he State can't unilaterally set a hearing date and say, [']hey, we're ready to go.[']"

PCR counsel did not turn down the opportunity for an evidentiary hearing. The PCR court did not grant one.

Affirmed in part; remanded for an evidentiary hearing in accord with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-0116-18T3